## PEQUENO *vs.* TAYLOR and others.

Upon a sale of molasses, made at Havana, by P. to U. P. & Co. the purchasers agreed to pay the price, on delivery. Subsequently, after U. P. & Co. had become embarrassed, and at a time when their bankruptcy was imminent, they obtained the delivery of the molasses on board their vessel, and procured a bill of lading thereof. Having failed, without the knowledge of P., they caused the vessel so laden with the property, to depart for New York, consigned to M. T. & Co., without paying for the molasses, and upon payment being demanded, they refused it, for want of ability. *Held* that there was sufficient evidence of the fraudulent intention of U. P. & Co. to obtain the delivery of the property without payment of the price, to require that question to be submitted to the jury, in an action by P. against a subsequent purchaser, to recover the value of the goods.

*Held, also,* that if the intent of the purchasers was fraudulent (which it was for the jury to determine) then the production at the trial of a note given by them at the time of the sale, for a part of the price, and an offer to surrender it, was in season; even if it should be found that the sale was partly upon credit. And this, although the note might have been, at some period, out of the hands of the plaintiff; provided the possession and exclusive interest was in him at the time of the trial.

This is the rule where the note is that of the fraudulent vendee, and not the note of a third party.

*Held, further*, that the right of stoppage *in transitu* was not in the case; the delivery of the property by the vendor on board the vessel of the purchasers having placed the same entirely in their dominion, and the property having reached its destination, as between the vendor and vendees. And the molasses was not *in transitu*, as between them, on its passage from Cuba to New York.

*Also held*, that if the note given by the purchasers was purely an accommodation note, and not an advance upon the security of the molasses when delivered; or if the purchasers, at the time the vendor made his demand for payment, waived a return of the note; the jury would have been justified in finding for the plaintiff as upon a conditional sale. But if the note was an advance upon such terms as to entitle the purchasers to claim the right to appropriate so much of the price of the molasses as would be sufficient to meet the note, and there was no subsequent waiver of that right, then the sale was not conditional. That the delivery must be considered conditional as to the whole of the property, or as to none.

THIS action was brought by the plaintiff, a resident of Cuba, against the defendants, to recover the value of a cargo of 49,222 gallons of molasses, shipped from thence early in July, 1859, and without the plaintiff's authority, consigned by the firm of Ulrici, Playle & Co., of that island, to Moses Taylor & Co., of the city of New York. The answers of the defendants deny that the molasses was, when shipped, the property of the plaintiff, but aver that the same belonged to the firm of Ulrici, Playle & Co., and the defendants also, in substance, allege, that upon the arrival of the property here, the same was seized under attachments issued at the suit of creditors of that firm, and sold to satisfy their demands. Upon the trial it was proven and conceded, that the plaintiff was owner of the molasses until the same was laden on board the Union State; and the real question was, whether the firm of Ulrici, Playle & Co. then, as against the plaintiff, became owners as purchasers from him. If they did, the plaintiff would not be entitled to recover. If they did not, he must prevail, inasmuch as it was not pretended that either of the defendants had purchased or made advances upon the property. The circumstances under which the molasses was delivered on board the Union State, were substan-

tially as follows : On the 28th of February, 1859, the plaintiff, at Havana, agreed to sell to the firm of Ulrici, Playle & Co. 100,000 gallons of molasses, and by another agreement of May 6th, 1859, 50,000 gallons more. The first named quantity of about 100,000 gallons was delivered in two cargoes, on board the Grampus and Crocus; the cargo by the latter not having been shipped until after the making of the agreement of May 6th. The lading of the cargo of the Union State commenced June 20th, and was finished on the 30th of June, or the 1st or 2d of July. The cargo was delivered at Carahatas, which is about 200 miles from Havana, the ordinary time for mail communication between the two places being from three to five days. The Union State lay, at the time she received the cargo, in Sagua La Grande bay, Sagua La Grande being about twenty miles from Carahatas. There is a telegraphic communication between the former place and Havana, but none from thence to Carahatas. The molasses was conveyed from the warehouses of the plaintiff to the Union State in lighters, and as each load was delivered, the captain, Foxwell, gave receipts therefor. It was customary for captains to give such receipts, and this was known to the firm of Ulrici, Playle & Co. And that these were given was also known to them. These receipts, as stated by Foxwell, the defendants' witness, were given that the holder thereof might be entitled, on their presentation, to receive bills of lading for the cargo. The usage of the island, as proven by two witnesses, and not denied, is, that the holder of such receipts retains his property in and control over the cargo embraced in them until they are surrendered. And Ulrici states that the plaintiff's consent was necessary for shipping the molasses as well as for dispatching the vessel. Before the cargo was laden on board, and as early as June 25th, the firm of Ulrici, Playle & Co. knew they were insolvent and must fail. Playle says the firm failed in June. Barroso and Pequeno state the failure to have been on the 2d of July. Ulrici swears it suspended July 4th, but he de-

clined to state whether the members of the house had re-
solved to stop before the Union State sailed, or to give any
information as to the pecuniary condition of the firm.   Mig-
uel Newhall was employed by Ulrici, Playle & Co. to receive
for them and gauge the molasses 'as it was sent on board.
And when the cargo was complete he gave to the plaintiff's
agent a receipt, stating the quantity delivered, intended as a
voucher to enable the seller to demand and collect the price.
No member of the firm of Ulrici, Playle & Co. was in Cara-
hatas when the molasses was shipped.   Their place of busi-
ness was Havana, and there also was the plaintiff's counting
house.   It was, therefore, impossible for the plaintiff to de-
mand the money for the cargo the instant it was delivered on
board; but such demand was made so soon as the vouchers
and bill could be transmitted to him in Havana.   And upon
demand made, the reply was that it could not be met, be-
cause the house had suspended payment.   Thereupon a tele-
gram was immediately dispatched by the plaintiff to his
agent at Carahatas to stop the Union State and take posses-
sion of the molasses ; but this was received about sixty hours
after she had sailed.   The time of sailing is stated by L.
Pequeno to have been the 3d of July; but Foxwell, the
master, states it was on the 5th, about 6 or 7 o'clock in the
morning.   Several days before the cargo was laden on board
the Union State, the firm of Ulrici, Playle & Co. knew they
were insolvent and must soon suspend ; and as by the law
of Cuba the insolvent cannot, after he becomes such, acquire
title to property purchased, this fact was concealed from the
plaintiff until the vessel could be hurried off.   The depart-
ure of the vessel was, as to the plaintiff and his agent, kept
secret.   No application was ever made to either for the cap-
tain's receipts for cargo, nor for permission to sign bills of
lading, nor for leave to dispatch the ship ; and these receipts
were retained by the plaintiff until they were produced as
evidence in this cause.   Bills of lading were, however, signed
by the captain, and delivered to the agents of Ulrici, Playle &

Co. as soon as the cargo was laden on board, and these had been made out in Havana by that firm, and sent by or delivered to Newhall, who procured the captain's signature thereto, on the 4th of July ; although the bills were dated the 2d. Before the molasses reached New York notice was given to the defendants of the plaintiff's rights and claims, but these were disregarded, and the property aftewards sold by them. On the foregoing facts, the court dismissed the complaint.

The plaintiff insisted that the court erred in not directing a verdict in his favor. (1.) Because, as holder of the captain's receipts, he retained the absolute control over and right to the possession of the molasses, until he should be paid therefor. (2.) Because, as the same, or at least a part thereof, was sold for cash, the title thereto did not vest in Ulrici, Playle & Co. until payment of the price, the right to insist upon which as a condition precedent, the plaintiff did not waive. (3.) Because, by the law of Cuba, under which the rights of the parties are to be determined, the plaintiff, upon the insolvency of Ulrici, Playle & Co., had a right to reclaim the molasses, whether the same was sold for cash or upon credit. (4.) Because, on the facts as proven, the plaintiff had a right, which he exercised, to stop the property *in transitu*. (5.) And at all events, even had the court been adverse to the plaintiff upon these grounds, it was bound to have submitted to the jury the questions whether or not the delivery of the molasses to Ulrici, Playle & Co. was conditional or unconditional; and whether or not they obtained possession of the same fraudulently.

The cause came before the court upon exceptions taken by the plaintiff to the decision of the judge, upon the trial, dismissing the complaint, and which were directed to be heard in the first instance at the general term.

*E. W. Stoughton* and *F. H. Dykers*, for the plaintiff. I. The plaintiff, by virtue of the usage of Cuba, and of the law merchant, by receiving and holding the captain's receipts

for the cargo in question, retained the control over and right to the possession of the same; and the firm of Ulrici, Playle & Co. in obtaining possession of the molasses without the plaintiff's consent, did so wrongfully, and neither they nor their creditors are entitled to hold the same. (*Ruck* v. *Hatfield,* 5 *Barn. & Ald.* 632. *Craven* v. *Ryder,* 6 *Taunt.* 433. *Brower* v. *Peabody,* 3 *Kernan,* 121. *Abbott on Shipping, marg. p.* 321. *Jones* v. *Bradner,* 10 *Barb.* 193. *Blossom* v. *Champion,* 37 *id.* 554.)

II. The molasses in question, or at least a part thereof, was sold for cash, payable on delivery. Payment of the price or waiver thereof, was, therefore, a condition precedent to the vesting of title in the firm of Ulrici, Playle & Co. Hence, independent of the said receipts, the plaintiff having demanded the price as soon as he could after delivery on board, and having taken immediate steps to assert his right to the possession of the property, is now entitled to recover the same, as against that firm, and all others claiming as their creditors. Whether the delivery is absolute or unconditional, and whether payment of the price as a condition to the vesting of title has or has not been waived, depends upon the conduct and intent of the parties at the time. It is not necessary for the seller to declare, when delivery is made, that he does so on condition of receiving payment; for such delivery will be conditional, if the intent of the parties that it should be so can be inferred from their acts and the circumstances of the case, and whether the delivery was conditional, or whether the condition has been waived is for the jury. (*Morris* v. *Rexford,* 18 *N. Y. Rep.* 552. *Smith* v. *Lynes,* 1 *Seld.* 41.) 1. The cargo was sold wholly or in part for cash, and it is not very material to consider which branch of this proposition be correct, for if part only was payable on delivery, the same principles of law would apply as to delivery, waiver, &c., as though payment of the entire sum was to be made. That the entire cargo was to be paid for in cash on delivery seems, however, to be clear from the follow-

ing considerations : 1. The molasses was sold at the current price of Cardenas on the day it should begin to be received. The evidence is uncontradicted that sales of molasses, in Cuba, were always for cash. The current rates mentioned in the contract were, therefore, necessarily to be cash rates. (2.) It is not stated in the contract that the note for $7277.50 was to be received in part payment of the molasses, and therefore the contract is consistent with the proof, that it was given for the accommodation of the plaintiff; and Ulrici admits that it was not given upon the request or for the accommodation of his firm. (3.) The cash, says Ulrici, was to be paid in Havana ; and that the note was not by his firm treated as part payment, is evident from his testimony that when his firm failed they owed the plaintiff $10,918.35, and is also shown by the approval as cash by Ulrici, Playle & Co., of the bills for the entire cargo. If, however, it can, upon the contract and facts proven, be held that the note operated as a payment or extension of credit, as to that part of the price which its amount covered, then very clearly as to the balance, amounting to nearly $4000, payment was to be made in cash on delivery ; for there was certainly no understanding, express or implied, that payment of this was to be postponed ; and as the presumption is that all sales made are for cash, he who would overcome this must establish the contrary by affirmative proof. (*Tipton* v. *Feitner*, 20 *N. Y. Rep.* 425. 1 *Parsons on Cont. marg. p.* 463.) 2. Not only was the sale for cash, but the plaintiff did not by delivering the molasses on board the vessel, waive his right to insist upon payment of the price, as a condition precedent to the vesting of title and right to possession in the buyers. Demand of payment could not be made until the property was placed on board, and then it could be done only by sending the bills and vouchers to Havana, where the firm resided. This was done with all possible despatch, and when payment was refused, an effort was made by the plaintiff at the earliest moment possible to reclaim the possession of the goods.

If, however, upon the proof, any doubt could have been entertained upon this point, the question of conditional delivery, or waiver, or both, should have been submitted to the jury, in conformity with the rule laid down in the cases above cited.

III. By the law of Cuba, as proven, the fact that the firm of Ulrici, Playle & Co. were insolvent at the time the molasses was laden, entitled the plaintiff to reclaim the same, whether sold for cash or upon credit. By virtue of that law, the plaintiff had a lien upon and could exercise dominion over the property, so long as it remained in the condition in which this did on board the vessel.

IV. Under the circumstances of this case the plaintiff, even if we assume the molasses to have been sold on credit, would have been entitled to stop the same *in transitu*, and this right he sufficiently exercised. (1 *Parsons on Mar. Law*, 342, &c. *Harris* v. *Hart*, 6 *Duer*, 606.)

V. There was abundant evidence from which to infer that the property was obtained with the fraudulent intent not to pay therefor; and this question should have been submitted to the jury.

*J. Larocque, S. Merrihew* and *A. J. Vanderpoel*, for the defendants. I. The contracts and receipts for the molasses make a clear case of absolute and unconditional delivery by the plaintiff to Ulrici, Playle & Co. 1. No payment whatever, either in cash or note, was to be made by the purchasers as a condition of the delivery; on the contrary, notes for the approximate amount had been given in advance, and the small balance, if any there might be, was to be settled "at the exhibition of the account." 2. Even if there had existed the right to insist on payment, as a condition of delivery, it would have been clearly waived by the acceptance of Newhall's receipt for the molasses, on account of the purchasers, and without any condition or reservation whatever. (*Smith* v. *Lynes*, 1 *Seld.* 41, *and cases cited.*)

Pequeno *v.* Taylor.

**3.** Under these circumstances, the retention by the plaintiff of the captain's receipts, and of his own agent's certificates of the delivery, so much relied on, becomes utterly insignificant and immaterial. (1.) The contracts and the established practice between the parties in the cases of the two previous vessels, fully proved and undisputed, entitled Ulrici, Playle & Co. to the bills of lading at Carahatas, on the completion of the loading of the vessels, without waiting for the receipts to go to Havana, for payment to be made there, and advice of it to be returned to Carahatas. (2.) The usage attempted to be proved, therefore, had nothing to do with the case. The parties had made their own stipulations and established their own practice ; and such a usage, involving a detention of eight or ten days of a vessel loaded and ready for sea, would be unreasonable and absurd, and is not pretended by any witness. (3.) Conceding for the sake of the argument, that the possession of the receipts might have entitled the plaintiff to make some reclamation against the vessel, if the bills of lading had been improperly delivered to Ulrici, Playle & Co., it could have no other effect, and the evidence of a full, unqualified delivery to the latter, already noticed, would be a perfect answer even to that claim. It will scarcely be pretended that a shipper cannot part with his title to the property shipped, *otherwise than by transferring the shipping receipts.* 4. Testing the case by the law of Cuba, the 9th subdivision of section 1114 of the Spanish code fully covers the case, even in favor of the syndics under the foreign bankrupt law, and supposing the property to have remained in Cuba. Nothing is better settled, however, than that foreign bankrupt laws and proceedings do not affect rights of property in this country, in cases like the present. (*Abraham* v. *Plestoro,* 3 *Wend.* 538.)

II. There neither existed a right of stoppage *in transitu* in favor of the plaintiff in this case, nor was any such right attempted to be exercised by him, before he brought suit, as was necessary to render it now availing. 1. This was the

case of the delivery of the property to the agent of the purchaser, at a port not the place of residence of the purchaser, on board a vessel chartered by the latter, for transportation not to him, but to a foreign port, on a new consignment on his account, which forms an express exception to the right of stoppage *in transitu* by the mercantile law. (*Stevens* v. *Wheeler,* 27 *Barb.* 658, *per Ingraham, J. Harris* v. *Hart,* 6 *Duer,* 616. *Bohtlingk* v. *Inglis,* 3 *East,* 381. *Fowler* v. *McTaggart, cited, with approval, in the two preceding cases. Inglis* v. *Usherwood,* 1 *East,* 521. *Hodgson* v. *Lay,* 7 *T. R.* 442. *Valpy* v. *Gibson,* 4 *Man., Gr. & Scott,* 837.) 2. The right of stoppage *in transitu* is a right not in disaffirmance of the contract, but in affirmance of it, and for security of the payment of the contract price; the vendor exercising the right being entitled, after application of the proceeds of the goods towards payment, to sue the vendee, and recover the deficiency. Here, on the contrary, the plaintiff expressly repudiated the contract by his notices, both to Moses Taylor & Co. and to the sheriff. (2 *Kent's Com.* 540–542, *marg. paging. Mottram* v. *Heyer,* 5 *Denio,* 636.)

III. Even if the plaintiff had been entitled to rescind the contract, and to reclaim the goods on the failure of Ulrici, Playle & Co. to pay for them, (as already attempted to be shown that he had not,) he could not, in any event, do so without tendering back the note for $7277.50, before the commencement of this action; that note having been procured to be discounted by him, and not having matured when the action was commenced. (*The Matteawan Co.* v. *Bentley,* 13 *Barb.* 641. *Wheaton* v. *Baker,* 14 *id.* 594. *Baker* v. *Robbins,* 2 *Denio,* 136. *Hogan* v. *Weyer,* 5 *Hill,* 389.)

IV. If an offer to return it on the trial would have been sufficient, (which is denied,) no such offer, which can avail the plaintiff, was made. An offer was made to return a paper which the plaintiff alleged to be the note in question, but the identity of which was disputed by the defendants, and no proof of it offered by the plaintiff.

Pequeno *v.* Taylor.

V. There was no evidence to carry the cause to the jury upon the question of fraud, by Ulrici, Playle & Co., in making the purchase. (*Brown* v. *Montgomery,* 20 *N. Y. Rep.* 287. *Nichols* v. *Pinner,* 18 *id.* 295.) 1. There was no evidence of their insolvency when the purchase was made. 2. There was no evidence of any representations made by them. 3. There was no evidence of any fraudulent practice or contrivance to obtain possession after the purchase, or even that they were insolvent when they obtained possession.

VI. The several rulings of the learned judge upon the trial, on questions of evidence, which were excepted to by the counsel for the plaintiff, were correct.

*By the Court,* LEONARD, J. The question of first moment in this case is whether there was sufficient evidence of fraudulent intent on the part of the purchasers of the molasses to require the judge at the trial to submit that question to the jury.

The molasses was delivered after the purchasers had become embarrassed, and at a time when their bankruptcy was imminent; the vessel chartered by the purchasers to receive and convey the plaintiff's molasses, was dispatched from her port in Cuba laden with 50,000 gallons; the bill of lading for this cargo furnished by the plaintiff was obtained and forwarded by the purchasers to New York after their failure and insolvency had become publicly known at Havana, where they resided; and all this occurred while the plaintiff was ignorant of any change in their pecuniary affairs.

The price of the molasses was by the agreement of the parties payable on delivery; but the purchasers having obtained the delivery on board their vessel, and having obtained a bill of lading, caused the vessel, so laden, to depart for her port of destination after their public failure at Havana, without making payment for the molasses, and upon payment being demanded refused it, for want of ability or on account of their insolvency.

There can be little doubt that the purchasers knew, when the molasses was being delivered, when they obtained the bill of lading and when the vessel sailed, that the price would not be paid on delivery, and that they knowingly deprived the plaintiff of the power to assert his title, and resume the possession of his property. Their intention to refuse payment after the delivery had been completed was during all this time at least probable.

It is said that the plaintiff had changed the terms of the contract of sale by receiving the note of the purchasers for $7277.50, an estimated approximation to the value of the molasses to be delivered under the contract of May 6, 1859, and of 41,000 gallons to be delivered under a former agreement. The price depended on the market value at the time of delivery. Upon making up the account after the full delivery, it appeared that a sum exceeding $3600 remained due beyond the amount of the note. As to this sum, it is beyond question that there was no extension of credit, and that it was payable when the delivery was completed.

It is not wholly clear whether there was an extension of credit *pro tanto* intended by the parties, upon the giving of the note. The note is contemplated and agreed upon in the contract of sale. No credit upon the molasses is mentioned, and it was by custom, as well as by the absence of any terms of credit in the agreement, to be paid for on delivery. The plaintiff testifies that the note was given for his accommodation. This evidence was not inconsistent with the contract. It is also consistent with the implied admissions of the purchasers when the account was presented for payment. The whole sum due, without reference to the note, was demanded, and no objection was made that there had been an extension of credit as to any part of the price, or that they were entitled to a surrender or credit for the amount of the note. I find no evidence tending to a contrary conclusion, except the receipt given by the plaintiff when he received the note on the 6th May, 1859, the same day the contract bears date.

Pequeno *v.* Taylor.

In the receipt the note is stated to be an anticipation upon the price of the molasses. This was about six weeks prior to the delivery of the molasses. The purchasers had no security for the note when it was delivered. It follows that the note was advanced upon the credit of the plaintiff, and upon the expectation that he would fulfill his agreement and deliver the molasses, when there would be mutual demands to be settled. Had the purchasers remained in good credit it is probable the plaintiff would have allowed the amount of the note to stand as payment to that extent. It cannot be said, even from the tenor of the receipt, that there was any agreement that the plaintiff should do so. The aspect in which the note was given by the purchasers and received by the plaintiff is important in respect to the obligation of the plaintiff to offer to surrender it before action, and also in respect to the conditional character of the sale. If it was purely an accommodation note, the plaintiff was not required to surrender it until its maturity.

The proper conclusion probably is, that the note did not amount to an extension of credit on the molasses, but upon the delivery of the molasses the purchasers were entitled to hold so much of the price then to become due, as a security that the plaintiff would provide for the payment of the note.

The receipt is subject to explanation. The omission of the purchasers to make any claim in respect to the note when payment for the molasses was demanded of them, and the fact of their insolvency rendering the note worthless as an advance, was a proper subject for the consideration of a jury in determining whether the purchasers had waived a return of the note at the time the plaintiff made the demand of payment. The plaintiff did however produce at the trial, and offer to surrender, a note corresponding in date, amount, time and parties, exactly with the note in question. There is no room for doubt that it was the identical note.

If the question of fraud in obtaining the delivery of the molasses had been submitted to the jury, and they had arrived

at the conclusion that the purchasers were guilty, it would then have been unimportant to determine whether there was an extension of credit for the amount of the note.

The evidence of the fraudulent intention of the purchasers to obtain the delivery of the plaintiff's property, without payment of the price, was sufficient to require that question to be submitted to the jury. If the intent of the purchasers was fraudulent, (and this was for the jury to determine,) then the production of the note at the trial, and the offer then made to surrender it, was in season even if it should be found that the sale was partly upon credit. (*Nichols* v. *Michael*, 23 *N. Y. Rep.* 264. *Fraschieris* v. *Henriques*, 36 *Barb.* 276.) Judge Selden, considering this question in the case cited from 23 *N. Y. Rep.* says, it would not affect the rule "if the notes had been at some period out of the hands of the plaintiffs, provided the possession and exclusive interest was in them at the time of the trial," (*p.* 273.) This I understand to be the rule in case the notes are, as in the present instance, those of the fraudulent vendee, and not those of a third party. The equity of the rule is clear where the paper is the worthless obligation of an insolvent purchaser.

The justice erroneously dismissed the complaint at the trial, without submitting the question of fraud to the jury, and there should be a new trial for that reason.

In respect to the right of stoppage *in transitu,* that question is not in the case.

The delivery by the plaintiff on board the vessel chartered by the purchasers placed the molasses entirely in their dominion; as much so as if placed in their warehouse. The plaintiff had made his delivery and was entitled to payment. The property had reached its destination, as between the vendor and vendees. The molasses was not *in transitu,* as between them, on its passage from Cuba to New York.

The plaintiff also insisted at the trial that he was entitled to recover upon the ground that the delivery was conditional upon payment of the price, and that without payment no title

Pequeno *v.* Taylor.

passed to the purchasers. If the note for $7277.50 was purely an accommodation note, and not an advance upon the security of the molasses when delivered; or if the purchasers, at the time the plaintiff made his demand for payment, waived a return of the note; the jury would have been justified in finding for the plaintiff as upon a conditional sale.

If the note was an advance upon such terms as to entitle the purchasers to claim a lien upon the molasses or its price, or the right to appropriate so much of the price as would be sufficient to meet the note, and there was no subsequent waiver of this right, then the sale cannot be considered as conditional.

The delivery must be considered conditional as to the whole of the molasses or as to none. The plaintiff could not arbitrarily separate so much of the molasses after delivery as would be an equivalent for the balance remaining unpaid, after deducting the note. The plaintiff claimed no such right. He demanded payment of the whole price, without reference to the outstanding note. He must stand on the case as made by his demand of the purchasers.

I am unable to perceive that the laws prevailing in Cuba have much to do with the case, except as they bear upon the question of fraud. These laws do not relate to the construction of the contract. Had the molasses been in any of the ports of Cuba when payment was demanded and refused, no doubt the laws there prevailing would have been enforced. When the plaintiff was in a condition to claim a surrender of the molasses, it no longer remained within the jurisdiction of the legal authorities of that island. Those Spanish laws which were introduced in evidence at the trial, relate to rights and remedies which cannot be enforced elsewhere, when the property comes within another jurisdiction. The purchasers may have desired to evade the operation of those laws, and hastened the departure of the vessel having the plaintiff's property on board, for that purpose. At least

that may have been a proper consideration for the jury in relation to the question of the intent of the purchasers.

The order dismissing the complaint should be set aside, and a new trial directed, with costs to abide the event.

[NEW YORK GENERAL TERM, November 3, 1862. *Ingraham, Leonard* and *Peckham,* Justices.]