ALEXANDER KING *v.* ABIJAH FITCH.

In an action to recover back property which had been fraudulently obtained upon credit, it is not necessary to aver that the plaintiff tendered back the notes received upon the purchase.

The fact of tendering back the notes received upon the purchase only goes to show that the plaintiff had not affirmed the contract after he had knowledge of the fraud.

It is unnecessary that the plaintiff cancel the notes of the defendant — it will be sufficient if he produce them on the trial.

The object of a demand of property is to put it in the power of the party to comply therewith without exposing himself to other parties.

If the demand be not sufficiently specific for such purpose, yet if the defendant does not object to the sufficiency of the demand, and refuses to deliver up the property for improper reasons, a further demand will be unnecessary.

If, in such case, the plaintiff has received the notes of other persons, or other property, he must restore or offer to restore them before suit brought.

APPEAL by the defendant from a judgment of the Supreme Court, rendered upon the verdict of a jury. The action was in the nature of trover for the conversion of a quantity of timber, which had been purchased by Thomas Nelson of the firm of A. King & Sons (who had assigned the cause of action to the plaintiff, who was one of that firm), and was based upon the allegation that the purchase was effected by means of false pretenses on the part of Nelson, which prevented the title from passing to the purchaser. The defendant was the assignee of Nelson under a conveyance of his property in trust for his creditors, certain of the creditors being preferred. King & Sons, and Thomas Nelson, were respectively dealers in lumber, the former having for their place of business and residence at Ithaca, and the latter at Auburn. Nelson purchased his lumber for the most part of King & Sons on credit. He thus purchased to the amount of $2,000 in the year 1854, and to the amount of $3,754.59 in 1855, $864.02 of which last was purchased in May of that year, and the residue in the autumn. The recovery was confined to the parcels purchased in the autumn of 1855, amounting to $2,600 including interest, it appearing that the

purchases of 1854, with an exception to be mentioned, had been paid for, and that a payment of $400 had been made on account of the purchase in May, 1855. A parcel of the lumber purchased in 1854 had been sunk in the Cayuga lake on its way to the purchaser. It was recovered in July, in the following year. It having been received by Nelson, he gave King & Sons his note for it, which had not been paid. Notes had been given for all the other lumber purchased. The complaint claimed to recover for lumber purchased by Nelson in each of the years 1853, 1854 and 1855.

The evidence on the trial, which was had at the Tompkins Circuit before Judge MASON, related mainly to the alleged fraudulent representations, which were claimed to be to the effect that he had a large real estate only slightly incumbered, that he was not otherwise indebted, and especially, that he had no accommodation at the banks in Auburn, and that he was abundantly responsible. These representations were sworn to have been made at various times on occasions of negotiations for the lumber in 1853, 1854, and 1855. The defendant's evidence was directed to showing that the representations, so far as any were actually made, were true, and that Nelson, whenever requested, had made a fair representation of his circumstances. Nelson's assignment to the defendant was executed the 25th March, 1856, and by it paper indorsed for his accommodation and discounted at the banks at Auburn, to a large amount, and much of which had been running during the years 1854 and 1855, was preferred to the general creditors, among whom were Messrs. King & Sons. It was proved that Nelson's real estate, which was extensive, was heavily mortgaged. It was shown that the plaintiff, on the 7th day of April, 1856, demanded of the defendant and Nelson, all the lumber which the latter had purchased of King & Sons, which was then piled indiscriminately in Nelson's lumber yard, on the ground that these purchases were made by means of fraudulent pretenses, and the plaintiff, at the time of the demand, produced and offered to give up the notes which had been given for it. The defendant claimed to hold the timber as assignee, and

55

said he could not give it up, but would hold on to the proceeds until he ascertained who was the true owner. This action was commenced shortly afterward.

A prominent position insisted upon in the defense, on the trial, and upon this appeal, was, that the plaintiff had ratified the sale prior to the demand of the timber of the defendant, and that the evidence of this was so strong as not to leave any question for the jury. It was proved by Thomas Nelson, by Robert Nelson, his son, by the defendant as a witness on his own behalf, and by one Eddy, an employee of T. Nelson, that the plaintiff came to Auburn on the first day of April, about a week preceding the demand, and was informed of the assignment, and looked over the record of it, and knew that Nelson's indorsers were preferred before him; that he looked over the assigned lumber in the defendant's hands, and was furnished by Robert Nelson with a statement of his father's indebtedness, and of the amount of the accommodation-paper preferred in the assignment, which the defendant said he wanted to show his sons, the other partners of King & Co.; that he complained that the indebtedness was larger than he had supposed; and claimed that he ought to have been preferred for at least a part of his debt; that he did not reproach Nelson for what he had done, but admitted that he had probably done the best he could do; that he proposed, in the presence of the defendant and Robert Nelson, that the latter should purchase the assigned lumber of the defendant as assignee, which Robert declined to do. According to the testimony of Robert Nelson and the defendant, the plaintiff on that occasion requested the latter to go on as assignee, and sell the lumber to the best advantage, and said that was his only chance of being paid.

The plaintiff, who was a witness on his own behalf, said on his direct examination that the first time he was at Auburn, " he looked the thing over and found how things stood." He was cross-examined on this feature of the case by the defendant's counsel, prior to the above-mentioned testimony of the defendant being given, and stated that he did not

recollect of telling the defendant to sell the lumber, or advise Robert Nelson to purchase it; and that he did complain of being deceived by the Nelsons, when he sold the lumber, by their representations that T. Nelson did not owe any debts except to his firm.

As to the plaintiff having full information as to the alleged fraud during his visit to Auburn on the first of April, the evidence was, that he did not then examine the real estate, but that as to a part of it he did so, when he subsequently came there to make the demand of the defendant; that on this last occasion he asked for and received a further statement of Nelson's assets and liabilities, in which the incumbrances on the real estate were set down at $5,500, and that its estimated value beyond the incumbrances was stated at $4,700.

It was shown that on this last occasion the plaintiff and one of his sons, who came with him, spent the greater part of the forenoon, prior to the demand of the lumber, in obtaining statements of indebtedness, and was then told by the defendant that the bank notes had been renewed from time to time for the last two or three years. Robert Nelson did subsequently purchase all the assigned lumber of the defendant as assignee.

At the close of the plaintiff's case, the defendant moved for a nonsuit on various grounds, which, so far as they are material, are noticed in the opinion; and, at the conclusion of the evidence, a like motion was made, grounded principally upon the position that the plaintiff, on the occasion of his first visit to Auburn, in April, 1856, had ratified the sales to Nelson, or had so conducted himself that he could not afterward disaffirm them, and claim that the title did not vest in T. Nelson; but the motion was denied. Upon the subject of such supposed ratification, the judge charged as follows: That when a party has been defrauded of his property under a pretended sale, he may, if he so elect, as soon as he discovers that fraud has been practiced upon him, rescind the sale and recover back the property; but that, in order to avoid such a sale, the party rescinding must restore

what he received and all he received, etc. That in applying this rule to the present case, the plaintiff cannot recover for the lumber sold prior to the fall of 1855, because all such prior purchases had been paid for in whole or in part, and as to the portion partly paid for, he had not offered to return the money paid. He further stated as follows: That if the firm of A. King & Sons did part with the property through the fraud of Nelson, the plaintiff is entitled to recover the value of the lumber, bought in the fall of 1855, in the hands of the assignees when demanded, provided the plaintiff has not debarred himself of his action after he became aware of the facts in the case and the condition of Nelson's affairs. While the law permits the seller to rescind the sale, it also requires that he shall do so at the first reasonable and practicable moment after he discovers the fraud. He must act promptly and without delay. If he affirm the contract after he has a knowledge of the fraud, even for a moment, he cannot afterward rescind. He also stated that it was a question for the jury whether the plaintiff had so conducted himself on the occasion of his first visit to Auburn after the assignment, as to deprive himself of this action by an express or implied acquiescence in the sale after being fully informed of the facts of the case.

The defendant excepted to the several points in the charge adverse to him, some others of which are noticed in the opinion, and to several rulings on the trial, including the denial of the several motions for a nonsuit and for special instructions. The verdict was for the plaintiff for $2,600. After an affirmance by the General Term, the defendant brought this appeal.

*John K. Porter*, for the appellant.

*George D. Beers*, for the respondent.

DENIO, Ch. J. The point most earnestly insisted on by the defendant's counsel is, that the plaintiff, by his conduct when at Auburn on the 1st day of April, 1856, ratified the sale of the lumber to Nelson, and thereby precluded himself

from claiming that it was void on account of fraud; no controversy exists as to the state of the law upon the effect of a ratification of a sale induced by fraudulent representations. The vendor may affirm it notwithstanding its original defective character, and pursue his remedy for the purchase price, or he may treat the sale as void, and claim the property as owner; but in the latter case he must act promptly as soon as he has discovered the fraud. While he continues under the influence of the fraudulent representations, his acts or declarations will not prejudice him, but will be considered as of the same character as his original assent, by means of which the property passed into the purchaser's hands. The judge charged in accordance with these principles, and it is not claimed that there was any error in the manner in which the law was laid down, provided the jury had any office to perform in respect to the question. But it is argued that the alleged acts of ratification were of such a character, and that they were so conclusively established, that no question of facts hould have been left to the jury. There is no dispute upon the evidence, but that the plaintiff when he first came to Auburn, after the assignment, and was made acquainted with it, and with the fact that Nelson's accomodation indorsers were preferred before him, spoke of the affair to the defendant, and to Nelson in the defendant's presence as one by which he was concluded, nor but that he then wholly omitted to assert any claim to the lumber based upon the invalidity of the sale, or on any defect in Nelson's title. The testimony of the defendant and of Thomas Nelson was positive to that effect, and it was corroborated by evidence of the conversation of the plaintiff with several other persons on the same day. The plaintiff then knew that the defendant was proceeding to execute the trust contained in the assignment, as though that instrument had passed to the defendant the title to the property which he claims to recover in this action. The plaintiff's testimony as a witness on his own behalf does not contradict the essential points of that given on behalf of the defendant upon this branch of the case. He swore that he did not recollect proposing to Robert Nelson to purchase

lumber of the defendant as assignee, or telling the defendant to sell it, but he did not pretend that he claimed to be still the owner, although he swears that he did complain to the defendant of fraud having been committed in the purchase of it from his firm. After the defendant had given the strong evidence which I have mentioned, the plaintiff was not again called to contradict or explain the declarations of acquiescence attributed to him by the defendant's witnesses.

· I think the judge might well have assumed it to be proved by uncontradicted evidence, that the plaintiff on that occasion, in his conversation with the defendant and with others in his presence, assumed that all the lumber passed to the defendant by virtue of the assignment, and that he expected the defendant to execute the trust contained in that instrument. I am, moreover, of opinion that if it were equally clear that the plaintiff had at that time the same full information respecting the fraud which he now sets up, which he had when he came to make the demand of the lumber about a week afterward, the defense of ratification should have been held to be established, and the jury should have been directed to find their verdict for the defendant. But it is not so clear that he had such information. One of the points of the alleged fraudulent representation was that Nelson owned a large real estate which was but slightly incumbered, and another that he was abundantly responsible. The evidence of the fraud would, of course, consist in the falsity of these representations, and could be ascertained only by comparing his property with his indebtedness, and the value of his real estate with the charges upon it. The plaintiff came to Auburn, where the facts could be ascertained, on the first day of April, and returned the following morning. He obtained a certain amount of information, but apparently not sufficient to enable him to act upon the assumption that a fraud vitiating the sale had been committed. He received certain statements concerning Nelson's indebtedness, from Thomas Nelson, his son. He appears to have acquainted himself with the material terms of the assignment, and was informed of the amount of the accommodation paper preferred

by it, but he made no examination of the real estate; and he came away without challenging the sales as fraudulent. He himself says that he complained of fraud, but this is denied by the defendant's witnesses. Nearly a week elapsed when he came again, accompanied by his son, one of the firm who were the vendors of the lumber. They spent the forenoon in examining the real estate of Thomas Nelson and the lumber on hand, and obtaining statements of Nelson's indebtedness, and then the plaintiff for the first time took the ground that Nelson's purchase of the lumber was void on account of the fraudulent representations; and he demanded that such of the lumber as had been purchased by Nelson from his firm should be given up to him. That he acquired some additional information bearing upon the integrity of the alleged representations at his second visit to Auburn is evident.

The fraud upon which the jury rendered their verdict condemning the sale may have been that which related to the value of the real estate beyond the incumbency. The knowledge respecting that value was acquired by an examination of that property on the last occasion. So of the indorsed paper. The additional statements which were furnished on the last visit, showing that indebtedness to have existed substantially as it stood at the time of the assignment, for several years before and during the whole period of the representations, may have been necessary to complete the evidence of fraud which has been found sufficient to avoid the sale. I concede that many of the most important features of the case were disclosed at the first time the plaintiff was at Auburn, but I am not able to say that the plaintiff was at that time fully informed of all the material facts which were subsequently shown to prove the case on the plaintiff's part. Hence I think it was not the duty of the judge to withhold the question from the jury whether the plaintiff, when he omitted to challenge the defendant's title at the first instance, was fully informed of the fraud. I do not say but that, as a juror, I should have held that the information was sufficient to make it his duty to determine finally which course he would pursue before leaving Auburn on the 1st or 2d of April, but

the evidence was not so positive and certain that the judge was entitled to decide the case himself. He therefore committed no error in submitting it to the jury. If the defendant has suffered wrong by the verdict, it was the fault of the jury and not of the judge.

At the commencement of the trial the defendant's counsel moved for a dismissal of the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and especially that it did not state that the defendant *wrongfully* received the lumber from Nelson. The action was brought for the conversion by the defendant of the personal property of King & Co.; and when it was allowed to have separate names for the different kinds of actions, for the sake of convenience it would have been denominated an action of trover. All that it was necessary to allege in the pleadings was that King & Co., the plaintiff's assignors, were the owners of the lumber, that it had come into the possession of the defendant, and that he had converted it to his own use. All this is plainly set forth in the complaint. In addition to that, the plaintiff saw fit to state his own title, namely the original ownership of King & Co. and the form of a sale to Nelson, which was effected with frauds, and that he wrongfully delivered the property to the defendant; and instead of confining himself to a simple statement of a conversion, he adds an allegation of a denial and refusal. I do not perceive that these statements of evidence modify or in any way impair the material allegations of property in the plaintiff and a conversion by the defendant. It was quite unnecessary to state that the defendant wrongfully received the property. Trover is not based on a wrongful taking, but consists in an unlawful conversion. There was, therefore, no defect in the complaint.

It appeared that Nelson had purchased lumber of King & Co. in the years 1854 and 1855. The plaintiff, when under examination as a witness on his own behalf, was asked by his counsel to state what representations were made by Nelson when he made the purchases of lumber in 1854, and the question was allowed to be answered; and by the answer

certain representations were shown to have been made when Nelson came to make the purchases in that year, and that was an exception to that ruling. It subsequently appeared that all the lumber purchased in 1854 had been paid for; but at a later period of the trial the plaintiff's counsel made the same inquiry of another witness as to representations in 1854, and a similar exception was made to the ruling admitting the question. There was a series of purchases of lumber on credit by Nelson of King & Co., extending through both the years 1854 and 1855, and the plaintiff's effort was to prove that, during the whole time, Nelson was largely indebted and in insolvent circumstances, carrying large accommodations at the banks in Auburn, but constantly represented himself to be essentially free from debt, and a person of competent means; and the proof tended to show such a state of things. Now, although the purchases of 1854 had been paid for, and the whole arrearages of indebtedness were on account of the purchases in the fall of 1855, that does not render the representations made during the earlier dealing wholly immaterial. It is not essential, in order to avoid a sale in form, on the ground of fraud, that the fraudulent representations should be made at the very time when the purchases sought to be avoided were made. Where the dealing is continuous or at short intervals, representations made at any time in the course of such dealings may, if the jury so find, be held to influence the seller in respect to the subsequent sales. The evidence in this case was that Nelson, or his agent, was interrogated on each occasion of purchasing lumber of King & Co., and on each of those occasions made similar declarations; and that his other indebtedness and ability to pay in each of the years mentioned were substantially the same. I am of opinion that there was no error in admitting the declarations made on each occasion of purchasing, though the earlier purchases had been paid for. (See *Zabriskie* v. *Smith*, 3 Kern., 322.)

Some of the representations relied on, were made by Robert Nelson, the son of Thomas Nelson, who was his agent in that respect, and was in his employment and had a general

knowledge of his property and affairs. The defendant's counsel objected to these representations on the ground that they were not set out in the complaint, and that they were not made at the time of the purchase of the lumber which had not been paid for, but on the occasion of former purchases. I have already said that it was unnecessary for the complaint to state the representations upon which the purchaser obtained possession of the property. The competency of the declarations of an agent when engaged in making purchases in behalf of his principal was not questioned. They are regarded in the same light as representations made by the principal himself; and it has already been shown that, although they preceded the time of the particular purchase which is drawn in question, they are proper to be submitted to the jury, and it is for them to determine whether, under the circumstances, they have a just influence upon that purchase.

The plaintiff was permitted to testify that he would not have disposed of the lumber to Nelson upon credit, except for the representations which he made as to his circumstances; and there was a similar ruling on taking the testimony of Joseph King, a witness for the plaintiff, who was a partner of the firm of King & Co., and, as such, took part in the sale of lumber to Nelson. The defendant excepted to these several rulings. It is a part of the transaction which a party seeking to avoid a sale of property on account of fraud must establish that the sale was induced by the representations and would not otherwise have been made. The defendant's argument is that this can only be shown by facts and circumstances, to be submitted to the jury, and that the direct testimony of the seller as to their influences upon his mind cannot be received. No doubt the intrinsic facts may be strong enough in a given case to establish the position, and it may also be true in a particular instance, that representations apparently pertinent to induce a sale, were not in truth the persuasive cause, the vendor having wholly relied upon other information, which he supposed correct, but which turned out to be erroneous.

The precise point to be established is the effect upon the mind of the seller produced by the purchaser's wrongful declarations. Where the seller is so situated as to be a competent witness, he can prove with entire certainty how far he was influenced by what the purchaser had said, and how far he yielded to the force of other facts or other information. I see no reason why he should be precluded from speaking. It is not an opinion which he is called upon to give, but the statement of a fact within his personal knowledge. The cases respecting the opinions of witnesses have, therefore, no bearing upon the question. Where the direct testimony of the seller is not obtainable, the facts attending the transaction may be sufficient; but it is because they prove the essential point argumentatively. The jury in such cases infers the principal fact by applying their experience to the ascertainment of the effect which the representations, under the circumstances, would be likely to produce. It would be illogical to exclude the direct testimony of the person whose mind is said to have been influenced by the seller's representations, where he is otherwise competent to testify as a witness. Suppose a sale to have been made by an agent to an insolvent person, would it not be competent for him to swear in an action by his principal that he assented to the sale, and parted with the possession of the property because the purchaser represented that he had a large estate and owed nothing? On the trial of indictments for obtaining money, *or property*, or other valuable things, by false pretenses, it is the constant practice to ask the prosecutor whether he parted with the money, or property, by reason of the statement of the prisoner. It is undoubtedly essential that statements should be of such a character as would naturally lead the owner of property to sell it to the party making them. Whether they actually did have that effect, may be shown by the oath of the owner, provided he be a competent witness.

Nelson was the owner of considerable real estate in 1854 and 1855, and down to the time of his failure. It did not appear when he purchased it. The defendant, when under

examination as a witness in his own behalf, was inquired of by his counsel as to what his real estate cost him, but the question was excluded on the objection of the plaintiff's counsel that it was immaterial. It had no bearing on the case unless the purchases were made during or shortly prior to Nelson's dealing with King & Co. If connected in point of time with these transactions, and before the failure, it might have a bearing upon Nelson's good faith, for if the purchases were made at exorbitant prices, it would tend to show that his means had been absorbed, or his indebtedness had been suddenly created by these purchases. The objection sufficiently intimated to the examining counsel that some further fact was necessary to show the evidence to be pertinent, *but nothing* to connect it with the representations was offered. Immediately after the exclusion the defendant was permitted to and did testify fully as to the value of his real estate in 1854. This was everything on that subject which had any bearing upon the issue.

The demand which the plaintiff made of the defendant on the delivery of the lumber was more comprehensive than his rights. There was among the lumber in the defendant's possession, not only that purchased in the fall of 1855 but portions of that purchased in the spring of that year, and some of that purchased in 1854. This had all been paid for or partly paid for, and as to that on which a partial payment had been made there was no offer to return the money which had been received. The defendant, however, did not put his refusal on that ground, but claimed to hold the whole under the assignment. There are two answers to the exception arising out of this branch of the case. The possession of Nelson, the sale being void, was wrongful. He might give a good title to a *bona fide* purchaser, but an assignee for the benefit of creditors, does not occupy that position. The possession of this lumber was always, in judgment of law, in the vendors. The defendant was in no better position to defend this action than if he had been the servant of Nelson. (*Ash* v. *Putnam,* 1 Hill, 302; *Cary* v. *Hotailing,* id., 311; *Olmsted* v. *Hotailing,* id., 317. The answer made by the defendant dis-

pensed with a mere discriminating statement of what the plaintiff conceived himself entitled to. The defendant maintained that his title under the assignment enabled him to retain all the lumber which had come to his hands, and he refused to lend any countenance to the claim of the plaintiff.

It was made a point in the prayer for instructions, that the plaintiff had not canceled the notes given for the lumber. He had offered to surrender them when he made the demand, and he produced them in court at the trial. If the defendant had required anything further to be done, it was for him to suggest it.

No point was made on the trial as to the protest of some of the notes by the bank at which they were made payable. The judgment appealed from, should, in my opinion, be affirmed.

INGRAHAM, J. This action was to recover from the defendant damages for the conversion of a quantity of lumber, which it was alleged was fraudulently obtained by Thomas Nelson from A. King & Sons. The plaintiff claims as assignee from the other parties in interest.

The complaint averred fraudulent purchases in the years 1853, 1854 and 1855, the transfer by the other parties in interest to plaintiff on 5th April, 1856, the delivery of the lumber by Nelson, to the defendant, on 1st April, 1856. The demand was dated the 7th April, 1856. Defendant put in a general denial. The alleged fraud consisted of representations as to the condition of the purchaser and that he did not owe anybody else.

Some of the representations were made by the son of Nelson, who made some of the purchases. One lot of lumber purchased in the fall of 1854, was sunk in the lake. For this a note was given by Nelson. All the other lumber purchased prior to 1855 had been paid for.

A large portion of the lumber bought in 1853, 1854 and 1855 was on hand in possession of defendant, all of which had been paid for excepting a part of that purchased in 1855, and the note given for the sunken lumber for $495.33.

When the demand was made of the defendant, the plaintiff demanded the lumber got of him, and tendered back the notes, all excepting the one given for the sunken lumber. The defendant said he held the property as assignee, and could not let the plaintiff have the property.

One of the firm of A. King & Sons, who sold the lumber, on examination by the plaintiff, was asked, " Would you have sold the lumber except upon the strength of the representations ?" to which he answered he would not. The defendant excepted to the admission of this question.

A motion was made to dismiss the complaint, because it did not state facts sufficient to constitute a cause of action, and did not aver that the property was wrongfully received by the defendant. The motion was denied, and defendant excepted.

The plaintiff asked for the representations made by Nelson when he purchased in 1854. This was objected to on the ground that he must be confined to representations made at the time of the purchase of the property in controversy, which was overruled and defendant excepted.

The same objection was made as to property which had been paid for at different times, all of which were overruled and exceptions noted.

On the part of the defendant, Nelson was asked as to the cost of his real estate. This was overruled, and defendant excepted.

When the plaintiff rested, the defendant moved for a dismissal of the complaint, on the ground that the demand was for a greater amount than he could recover, because it embraced property which had been paid for; that the demand should have been made immediately upon ascertaining the transfer to defendant; that the plaintiff had affirmed the contract, and because he did not cancel the notes on the trial. This was denied, and defendant excepted. The judge charged the jury, among other things, " that, although the demand of the plaintiff was for all the lumber in the hands of the defendant which had been purchased of A. King & Sons, the plaintiff might still recover the value of the lumber on hand

from the fall sales of 1855. If the demand was for too much it was the duty of the defendant to have offered to restore such as he was entitled to."

He also submitted to the jury, as a question of fact for them, whether what took place upon the occasion of the first visit to Auburn was an acquiescence in the sale after being informed of the facts of the case.

To each of these portions of the charge the defendant excepted. The defendant also requested the judge to charge the jury that the defendant was entitled to a verdict because the plaintiff had not actually canceled the notes which were given for the lumber. This was refused, and the defendant excepted.

The jury rendered a verdict for the plaintiff for $2,600, for which judgment was entered; and the judgment was affirmed by the General Term.

The objection to the sufficiency of the complaint was not well taken. The offense consisted in fraudulently obtaining the property by Nelson. When that was made out, the title remained in their vendors, and it was not necessary for him to show any wrongful act on the part of the defendant in receiving the property. When the plaintiff showed fraud in the purchase, and a demand of the property from the person in possession, he made out a *prima facie* case to entitle him to recover. It is not necessary to inquire whether if the defendant had been a holder for value without notice he would have been protected, because if he was such a holder the onus of proving that fact was on him, and because in this case it appeared that the defendant's claim was merely as assignee under a voluntary assignment for the benefit of creditors, and that nothing was paid by the defendant therefor.

Nor was it necessary to aver that the plaintiff had tendered back what he had received upon the purchase. The facts proved showed that there never had been a valid contract. The whole cause of action rested upon that issue. The subsequent matters which were necessary to be shown on the trial, in regard to the return of what had been received, did

not go to make out a cause of action but to relieve the plaintiff from any supposed affirmance of the sale after he obtained knowledge of the fraud. Such evidence is rather to rebut the presumption which the defendant might claim to exist from the acts of the plaintiff as affirming the contract.

The cause of action is that the title was in the plaintiff's assignors and that no title ever passed to Nelson. Whether the plaintiff had in time disaffirmed the contract, or whether he had done everything necessary to prevent the defendant from claiming that he had waived his right to resume possession of the property, was evidence to be furnished and which would go to make out the cause of action or defense, but not necessarily to be averred in the complaint.

The declarations of Nelson as to his solvency made at the time of purchases prior to 1855 were admitted in evidence against the defendant's objections. These declarations were the inducements to the first sales, and they undoubtedly remained in the remembrance of parties afterward. Nothing had been done by Nelson to correct them, but, on the contrary, when the firm of King & Sons declined making further sales, similar representations were again repeated. I see no ground of objection to the testimony. The evidence show, from the commencement, the intention of impressing upon the minds of the vendors that Nelson owed nobody but them and that there was no danger in giving credit to him.

The inquiry is whether the purchaser made any false statements by which the vendor was deceived and the property obtained from him. Such fraud may be practiced by a continuous course of misrepresentation during a series of transactions and still continued notwithstanding the first purchases were paid for. In fact such payment may be a part of a scheme to gain the confidence of the vendor, and induce him to make further sales and to give larger credit. (*Zabriskie* v. *Smith*, 3 Kern., 322, 332.)

The question was put to the plaintiff whether he would have trusted Nelson but for these representations. The objection was, not to the form of the question as leading, but

to the permitting the vendor to state whether he gave credit on them. This could only be known to himself, and it was a material ingredient in the plaintiff's case. If the vendor may not say whether he gave credit on the strength of the representations, or whether he would have trusted the purchaser without them, it becomes a matter for the jury to guess at without the only positive evidence there can be on the subject. I know it is subject to the criticism that it is the conclusion of a witness, but not justly. The conclusions of a witness are the results of his judgment upon various facts coming to his knowledge, and are properly excluded because the jury can form similar conclusions themselves; but this inquiry is as to the cause of action on the part of the vendor in making the sale, and the inducements which le l to it. It is not what he thinks of the acts of others, but what he did himself in consequence of these acts.

Some of the purchases were made by the son Robert in the absence of the father. The representations made by him were offered in evidence and objected to. The whole price to be paid for these purchases had not been paid, and the goods which were the subject of purchase formed part of the property claimed and demanded by the plaintiff.

Robert Nelson must be treated as the agent of the purchaser while acting for him. His representations made at the time of the purchase, if false, would vitiate the contract the same as if made by the purchaser. For this reason the evidence was admissible. It was not necessary to aver in the complaint that the representations were made by the agent and not the principal. That was only a matter of evidence. Indeed, as before stated, no such averments are necessary in the complaint, especially where the action is to recover back the property. Even if the plaintiff chooses to waive the tort and sue on contract, it would be unnecessary to set out such matters in the complaint. This was held in *Roth* v. *Palmer*, 27 Barb., 652, 656. HOGEBOOM, J., says: " I think the plaintiff might properly and preferably have prosecuted simply for goods sold and delivered, and allowed the rest of the transaction to come out as matter of evidence."

It was no more necessary to aver that the representations were made by an agent than by the principal, and in both cases such matters were properly treated as evidence, and not as part of the cause of action.

A question was asked of Nelson as to the cost of his real estate. This was excluded, and the defendant excepted. I am at a loss to see what relevancy this question had to the matters in issue. How he lost his property was immaterial. Whether he had any or not when the representations were made would have been pertinent. The defendant appears to have offered this evidence to explain the insolvency of Nelson. As no such inquiry could properly come before the jury, there was no ground on which this evidence could have been received. Proof that he had lost his property without the least fault would not excuse the representation that he had property after it was expended.

The plaintiff tendered the notes held by him at the trial, but did not cancel them. This was made a ground of motion for nonsuit. The cancelment of the notes was not necessary at the time. It was sufficient to produce them on the trial. Being the notes of the debtor merely, they cease to be of any value the moment it was settled that the contract was void. SELDEN, J., says, in *Nichols* v. *Michael* (23 N. Y., 269–73): " It would be more in consonance with equity to hold it sufficient to produce the notes upon the trial and surrender them to the custody of the court, as in that case the rights of both parties are protected. If the fraud is made out and the contract subverted, the notes are void and will be canceled by the court. If the plaintiff fail to establish the fraud, the notes can be returned to him if the nature of the contract is such that justice requires it." Such I think to be the proper rule in similar cases.

When the plaintiff demanded the lumber of the defendant, he tendered the notes he had received from Nelson and demanded all the lumber. Of this, some parcels had been paid for entirely, and some in part. The defendant asked for a dismissal of the complaint on this ground. It is conceded that, if the action had been against Nelson, the pur-

chaser, no demand would be necessary, but that, inasmuch as the defendant received the property lawfully and without notice of any fraud, a demand was necessary to entitle the plaintiff to maintain the action. If any demand was necessary, it was such a demand as would put it in the power of the defendant to comply without exposing himself to liability to other parties. Had the defendant complied with the plaintiff's demand, and delivered up to the plaintiff all the lumber in his possession that was bought of King & Sons, he would have been liable to the creditors, for whom he was trustee. Personally, he had no knowledge as to which of the parcels of lumber was paid for and which were not, while the plaintiff had such knowledge; and I cannot think, with the learned judge who delivered the opinion below, that we should presume, without proof, that the defendant was so informed by Nelson, of whom he obtained the lumber. The whole case shows the defendant to have been lawfully and innocently in the possession of the property, and if the plaintiff conceived he had a claim on any part of it, fair dealing required that he should designate what parcels of lumber he claimed to have redelivered to himself. If he had demanded all the assigned property because one parcel purchased by Nelson had not been paid for, no one would for a moment suppose, either that the defendant was bound to comply with that demand, or that the plaintiff had done what the law requires him to do to entitle him to a right of action. I can see no difference where he demands four or five different parcels, sold at different times, because one parcel had not been paid for. If the defendant, in answer to this demand, had objected on the ground that he did not know which part was not paid for, and requested the plaintiff to specify what he was entitled to, I think the demand would not have been sufficient. But the defendant put his refusal on an entirely different ground, showing his determination not to deliver up any of the property, but to await the result of the litigation. He said " he could not deliver up the lumber, that he was able to pay for it, and should hold on to it or the avails of it until

he knew who was the right owner." This rendered any further demand unnecessary. It was a refusal to deliver any of it, not based on any insufficiency of the demand, but an absolute denial of the plaintiff's right to it, and a refusal to deliver any to him. Another question is as to the sufficiency of the tender to warrant the recovery.

It is now well settled where the creditor held nothing but the purchaser's notes for the goods purchased, it is not necessary to tender such notes before action, but that it is sufficient to produce them on the trial to be canceled. *Nichols* v. *Michael, supra.* And it is equally well settled if he has received the notes of other persons or other property on account of the purchase he must restore or offer to restore the same before suit. This was so stated in *Nichols* v. *Michael,* as the general rule. " Where one party to a contract elects to rescind it for fraud, it is an indispensable preliminary that he surrender all that he has received from the other party upon the contract. BEARDSLEY, J., in *Mason* v. *Bond* (1 Denio, 72-74), says: " The party who would disaffirm a contract must return whatever he has received upon it. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind *in toto* if at all." (*Baker* v. *Robbins,* 2 Denio, 139; *Fisher* v. *Conant,* 3 E. D. Smith, 199.) This rule was recognized by the judge upon the trial. He told the jury, " In order to avoid such sale the party rescinding must restore what he has received, and all he has received." This was all the defendant had a right to claim. No part of the lumber purchased in the fall of 1855 had been paid for. The vendor had received nothing except the notes of the purchaser, and these were produced on the trial. In regard to this portion there was a good cause of action made out if the contract was fraudulent, and the judge therefore rightly refused to dismiss the complaint on this ground. As he instructed the jury that the plaintiff could not recover for any other sales except those in the fall of 1855, it was unnecessary to give the jury any further instructions in regard to the money paid on former purchases. The remaining question is as to the

propriety of submitting to the jury whether the plaintiff had not affirmed the contract on his first visit to Auburn. He had told the jury that the seller, if he rescinds the contract, must do so the first reasonable and practicable moment after he discovers the fraud. If he affirms the contract after he has a knowledge of the fraud, even for a moment, he cannot rescind, and he submitted to the jury whether what he did at Auburn was such an affirmance.

It is not by any means clear from the evidence that the plaintiff, when he went to Auburn, had full knowledge of the circumstances attending the alleged fraud; and whether he had or not was, I think properly, submitted to the jury. It does not appear that the plaintiff had any knowledge when the debts were created or what debts were owing at the time the representations were made. On various points connected with this part of the case there was uncertainty calling for the finding of the jury.

A point is made as to the amount of damages. That was a question of fact, which if erroneously found should have been corrected in the court below.

The judgment should be affirmed.

Judgment affirmed.