# ABBOTT'S NEW CASES.

## HURST *v.* TROW'S PRINTING AND BOOK-BINDING CO.

*N. Y. Common Pleas, General Term ; January*, 1893.

1. *Contract ; rescission.*] A contract between two publishers provided, that for the period of three years one of them should have the exclusive right to have impressions printed from certain plates belonging to the other, and that during the same period the latter should not publish any works competitive to those covered by the terms of the contract ; and that for such rights $90,000 should be paid by the former, for which thirty-six negotiable promissory notes should be given, each for $2,500, payable at intervals of one month respectively.—*Held*, that upon default in the payment of any of such notes, the party to whom they were payable might terminate the contract as to the unexpired part of its term, and still hold the other party upon the contract and notes for the liability incurred by his previous defaults.

2. *The same.*] The exercise of the right, in such a case, to terminate the contract as to the future, does not so modify the original contract as to discharge the indorsers of the notes, as to the notes which are due and unpaid at the time the contract is so terminated.*

3. *The same.*] The party to whom the notes were payable under such contract gave a written notice that he " terminated and rescinded " the contract because of the non-payment of sev-

---

* See note on the legal effect of giving notes for payments yet to accrue under a continuing contract, at the end of this case.

eral of the notes, and at the same time returned only the notes that were not yet due.—*Held*, that in the light of the surrounding circumstances, the notice should be construed as terminating the contract as to the future only, and not as rescinding it from the beginning, so as to cut off the accrued rights upon the notes already due ; in such a case, the word " rescind " as used in the notice, must be regarded as mere tautology and synonymous with the word " terminate."*

Appeal by defendants from the judgments in two actions, tried together, entered against them upon verdicts directed by the court, and from orders denying motions for new trials.

The actions were brought by Thomas D. Hurst against the Trow's Printing and Bookbinding Company and Edward Lange, as indorsers of certain promissory notes made by John W. Lovell. The defendant's answers set up the defense that the contract under which the notes had been given had been rescinded.

The further facts are fully stated in the opinion.

· *Frederic R. Kellogg* (*Carter, Pinney & Kellogg*, attorneys) for appellants.—I. The indorsers upon a promissory note are discharged by whatever discharges the maker (citing *Dan. Neg. Inst.* § 1306).

II. The election to rescind the contract bars an action to enforce the contract (citing Graves *v.* White, 87 *N. Y.* 463 ; Freeth *v.* Burr, *L. R.* 9 *C. P.* 208 ; Mersey Steel & Iron Co. *v.* Naylor, *L. R.* 9 *App. Cas.* 434 ; Mills *v.* Parkhurst, 126 *N. Y.* 89 ; *Bishop on Contracts*, § 827 ; Creighton *v.* Haggerty, 50 *Super. Ct.* 9 ; Weeks *v.* Robie, 42 *N. H.* 316 ; Stewart *v.* Huntington, 4 *State Rep.* 760 ; Morris *v.* Rexford, 18 *N. Y.* 552 ; Bowen *v.* Mandeville, 95 *Id.* 237 ; Strong *v.* Strong, 102 *Id.* 69 ; Fowler *v.* Bowery

* In the recent case of Brusie *v.* Peck, 135 *N. Y.* 622, 625, 626, the word is used in this sense.

Hurst v. Trow's Printing and Bookbinding Co.

Savings Bk., 113 *Id.* 450; Conrow v. Little, 115 *Id.* 387; Thompson *v.* Fuller, 28 *State Rep.* 4.

III. The notes and contract must be taken together, and be regarded as one agreement (citing Marsh v. Dodge, 66 *N. Y.* 533; Seward v. Huntington, 94 *Id* 104; Hill v. Huntress, 43 *N. H.* 483; *Tiedmann Com. Paper*, § 42; *Am. & Eng. Enc. Law*, 340; Muzzy v. Knight, 8 *Kan.* 456; Mayer v. Graeber, 19 *Id.* 165; Cuthbert v. Bowie, 10 *Ala.* 163; Brownlee v. Arnold, 60 *Mo.* 79; Parks v. Cooke, 3 *Bush.* 168; Richardson v. Thomas, 28 *Ark.* 387; Elliott v. Deason, 64 *Ga.* 63; Polo Manuf Co v. Parr, 8 *Neb.* 379; Goodwin v. Nickerson, 51 *Cal.* 166; Third Nat'l Bank v. Armstrong, 25 *Minn* 530; Lawrence v. Griswold, 30 *Mich.* 410; Rodgers v. Broadnax, 24 *Texas*, 538).

IV. A party who seeks to rescind a contract must rescind *in toto* (citing Howard v. Hayes, 47 *Super. Ct.* 189; affd. in 90 *N. Y.* 643; Francis v. New York & Brooklyn R. R. Co., 108 *Id.* 93; *Bishop on Contracts*, §§ 679, 836; Voohees v. Earle, 2 *Hill*, 288; Moody v. Gerharts, 21 *Weekly Dig.* 524; Wheaton v. Baker, 14 *Barb.* 594; Day *v.* N. Y. Central, etc. R. R. Co., 53 *Id.* 250; Meyer v. Hallock, 2 *Robt.* 287; Westchester Gaslight Co. v. Yonkers Gaslight Co., 14 *Weekly Dig.* 96; *Story on Contracts*, § 34; Cobb v. Hatfield, 46 *N. Y.* 533; Stevens v. Hyde, 32 *Barb.* 171; Bishop v. White, 13 *Nev.* 41; Andrews v. White, 28 *Abb. N. C.* 150; Raymond v. Bearnard, 12 *Johns.* 274; Haldeman v. Chambers, 19 *Texas*, 1; De Peyster v. Pulver, 3 *Barb.* 284; Thompson v. Lyons, 54 *Super. Ct.* 101; Bigler v. Morgan, 77 *N. Y.* 312; McMichael v. Kilmer, 76 *Id.* 366).

V. The contract is entire, and not separable (citing Mersey Steel & Iron Co. v. Naylor, *L. R.* 9 *App. Cas.* 434; Peck v. Burr, 10 *N. Y.* 294; Norrington v. Wright, 115 *U. S.* 188).

VI. The notes in suit were not exempted by the rescission (citing *Leake on Contracts*, pp. 72, 788; McCreery v. Day, 119 *N. Y.* 1; Roe v. Conway, 74 *Id.*

201 ; Hale *v.* Brooklyn Life Ins. Co., 120 *Id.* 294 ; Nightin-
gale *v.* Eiseman 121 *Id.* 288 ; Sondheimer *v.* Troy & Lan-
singburgh R. R. Co., 20 *State Rep.* 292).

VII. If the rescission be construed to apply solely as
to the portion of the contract which remained to be per-
formed, its effect would be to so materially modify and
change the original contract that the indorsers of the notes,
would be discharged (citing Woods *v.* The Jefferson
County Bank, 9 *Cow.* 194 ; *Daniel Neg. Insts.* § 1303 ;
Shutts *v.* Fingar, 100 *N. Y.* 539 ; Hubbly *v.* Brown, 16,
*Johns.* 73 ; Clark *v.* Devlin, 3 *Bos. and P.* 363 ; Gunnis,
*v.* Weighley, 114 *Pa. St.* 194 ; Blair *v.* The Bank, 11
*Humph.* 74 ; *Randolph Com. Paper*, §§ 902, 947, 1706 ;
*Story on Notes*, § 413 ; 2 *Dan. Neg. Inst.* § 1305 ; People
*v.* Backus, 117 *N. Y.* 196 ; Union Dime Savings Bank *v.*
Feltz, 25 *Abb. N. C.* 357 ; Nat. Banking Assn. *v.* Conk-
ling, 90 *N. Y.* 116 ; Miller *v.* Stewart, 9 *Wheat.* 703 ;
Cornell *v.* Eagen, 13 *Daly*, 506 ; Ward *v.* Stahl, 81 *N.
Y.* 408 ; Paine *v.* Jones, 76 *Id.* 274 ; 2 *Brandt on Surety-
ship*, §§ 378, 388 ; People *v.* Vilas, 36 *N. Y.* 460 ; Grant *v.*
Smith, 46 *Id.* 93 ; Polak *v.* Everett, *L. R.* 1 *Q. B. D.* 669 ;
Brigham *v.* Wentworth, 11 *Cush.* 123 ; Williams *v.* Bar-
rett, 52 *Ia.* 637 ; Bangs *v.* Strong, 4 *N. Y.* 315).

*Andrew Gilhooley*, for respondent.—I. The word
" rescind " did not mean that the contract was to be res-
cinded *ab initio ;* it was used in the narrower sense of ter-
minating the contract as to future transactions (citing 28
*Abb. N. C.* 145, note ; *Bispham Eq. Juris.* § 506 ; *Leake on
Contracts*, 3d ed., p. 53 ; Bluck *v.* Capstick, *L. R.* 12 *Ch.
D.* 863 : Man *v.* Palmer, 3 *Abb. Ct. App.* 162 ; Kenyon *v.*
Knights Templars, etc. Assn., 122 *N. Y.* 247 ; McGaffin *v.*
City of Cohoes, 74 *Id.* 387 ; French *v.* Carhart, 1 *Id.* at p.
102 ; Bridger *v.* Pierson, 45 *Id.* at p. 604 ; Blossom *v.*
Griffin, 13 *Id.* 569 ; Zimmer *v.* Settle, 124 *Id.* 37 ; Roe *v.*
Conway, 74 *Id.* 201 ; McCreery *v.* Day, 119 *Id.* 1 ; Duncan
*v.* New York Mutual Insurance Co., 46 *State Rep.* 241).

II. The meaning of the notice as to the termination of the contract could only be understood from extrinsic circumstances, and this made its true intent a question for the jury (citing Kenyon *v.* Knights Templars, etc. Assn., 221 *N. Y.*, at p 254; First Nat. Bank *v.* Dana, 79 *Id* 108; Gardner *v.* Clark, 17 *Barb.* 538; Etting *v.* Bank of U. S., 11 *Wheat.* 59; *Thompson on Trials,* § 1803; 2 *Phillips on Evi., Cow. & H. Notes,* p. 1420; Brown *v.* McGrau, 14 *Pet.* 479; Smith *v.* Cal., 55 *N. Y.* 678; Hart *v.* Ryer, 43 *State Rep.* at p. 140; Powell *v.* Powell, 71 *N. Y.* 73; Ayres *v.* Quigley Furniture Co., 59 *Super. Ct.* 4; Railroad Co. *v.* Stoat, 17 *Wall.* 671; Thurber *v.* Harlem Bridge, etc. Railroad Co., 60 *N. Y.* 326; Taber *v.* Supervisors of Erie, 38 *State Rep.* at p. 30; Agawam Bank *v.* Strever, 18 *N. Y.* 502; Dwight *v.* Germania Ins. Co., 103 *Id.* 341).

BOOKSTAVER, P. J.—The two actions were tried together and were founded upon two promissory notes given by John W. Lovell, under an agreement between himself and the plaintiff, which provided, among other things, that, during a period of three years after the date of the contract, Lovell was to have the exclusive right to have impressions printed from certain plates belonging to Hurst, and that, during the same period, the latter should not publish, directly or indirectly, any works competitive to those covered by the terms of the contract; and for these exclusive rights, the agreement provided that Hurst should receive the sum of $90,000, for which sum Lovell should give him thirty-six negotiable promissory notes, each for $2,500, payable at intervals of one month, respectively, each to be drawn to the order of Trow's Printing and Bookbinding Co., to be indorsed by them and by the defendant Lange. The agreement also provided that this sum of $90,000 was intended not only to include the right to use the plates, but also a consideration for the relinquishment of competing business, and that, if the plates

were destroyed before the termination of three years, it should not be considered as abating the payment of any portion of this sum. The agreement further provided for the purchase by Lovell of a large amount of book stock and sheets, and that Lovell should be bound at the end of the three years, or at such earlier time as he might desire, to purchase all the plates covered by the contract for the sum of $75,000, in addition to the $90,000 before mentioned, and that, from the making of said purchase, Hurst should become bound to refrain from entering into any competing business for twenty-five years after the date thereof with certain exceptions.

Under this contract the thirty-six notes provided for in the agreement were delivered to the plaintiff, each made by Lovell and indorsed by the defendants as provided for in the agreement. Subsequently fifteen of these notes fell due and were paid at maturity, but the sixteenth and seventeenth notes of the series, which are the ones in suit in these actions, were not paid, as was also the case with six others falling due thereafter. After the delivery of these notes to the plaintiff he transferred the two in question to Samuel J. Kerr, by whom these actions were originally commenced, but subsequently, in December, 1891, the notes were taken up by the plaintiff from Kerr, and he again became their sole owner, and remained so down to and including the time of the trial. On March 9th, 1892, there being at the time seven notes of this series unpaid, including the two now under consideration, Hurst sent the following letter to Lovell :

"Law office of Andrew Gilhooly, Temple Court Building, 5 Beekman street, New York, March 9th, 1892.

"John W. Lovell, Esq. :

"Dear Sir—Your non-payment of your note for $2,500, payable March 7th, 1892, under our contract of March 4th, 1890, is a breach of condition on your part, and, in view of the repeated defaults on previous notes, I cannot let it pass. I hereby give you notice that your rights

Hurst *v.* Trow's Printing and Bookbinding Co.

under the contract depend on the due payment of the obligations therein referred to, and the performance of the conditions therein named on your part, and these must hereafter be promptly made and performed by you. If the above note, dishonored on the 7th inst., is paid without further delay, and no further default occurs, I am prepared to waive any claim I may have to rescind the contract; otherwise, I shall enforce my right to do so.

"Yours, &c.,　　　　　Thomas D. Hurst."

On April 4th Hurst reiterated the statements contained in that letter by another of that date; and on April 9th, 1892, the note of April 7th having gone to protest, signed a letter prepared by his lawyer, which is as follows:

"Law office of Andrew Gilhooly, Temple Court Building, 5 Beekman street, New York, April 9th, 1892.

"John W. Lovell, Esq.:

"Dear Sir—Referring to my written notice to you, bearing date March 9th, 1892, notifying you that I should enforce my right to rescind my written contract, with you, dated March 4th, 1890, in case your note for twenty-five hundred dollars, payable March 7th, 1892, under said contract was not paid without delay, or in case any further default occurred on your part in the performance of the said contract, I now notify you that in view of your continued default in the payment of said note for twenty-five hundred dollars, payable March 7th, 1892, and of your repeated and continued defaults in the payment of previous notes given under said contract, and your default in the payment of your note for twenty-five hundred dollars, payable March 7th, 1892, under said contract of March 4th, 1890, I hereby terminate and rescind my said written contract with you, bearing date March 4th, 1890, and herewith return to you eleven notes given under said contract of March 4th, 1890, for the sum of twenty-five hundred dollars each, dated March 4th, 1890, and payable to the order of Trow's Printing and Bookbinding Com-

pany, at 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 months respectively, after date.

"Yours, &c., THOMAS D. HURST."

Inclosed in this letter were the eleven notes mentioned therein. To this letter Lovell replied as follow:

"New York, April 9th, 1892.

"Thomas D. Hurst, Esq., 134 Grand street, New York:

"Dear Sir—I have received your favors of April 4th and April 9th, in regard to our contract of March 4th, 1890, in which you inform me that you rescind this agreement. I have carefully considered the whole matter, and have concluded to acquiesce in this rescission, and I, therefore,, hereby notify you that I consent and agree that the contract in question shall be and is wholly rescinded and annulled. "Yours very truly, J. W. LOVELL."

Meanwhile, and up to the 9th April, 1892, Hurst had completely performed all of the terms of the before mentioned agreement on his part to be performed, and Lovell had enjoyed the exclusive use of the plates referred to in the agreement, and Hurst had refrained from publishing the books he had undertaken not to publish. The eleven notes returned, as before stated, were all notes maturing after April 9th, 1892. The eight notes maturing before that date, then outstanding and unpaid, were retained. Of these Hurst on April 9th, 1892, held and owned five, including the two in question in these actions, which actions were then pending; and the remaining three were in suit by other parties against Lovell and the defendants herein.

The foregoing facts appearing at the trial, the court, when all the evidence was in, at the request of the plaintiff, directed a verdict in his favor for the full amount of the notes with interest, to which the defendant excepted, and this exception raises the only question to be considered upon this appeal.

Hurst *v.* Trow's Printing and Bookbinding Co.

The direction was made at the close of the evidence, on motion by both parties, for the direction of a verdict, one in favor of plaintiff and the other for the dismissal of the complaints and a judgment in defendant's favor, and neither party asked to go to the jury upon any question, thus submitting to the court for its determination any questions of fact that may have arisen upon the evidence in the case. This gave to the judge the office of the jury, and brings up the question whether there was sufficient evidence to support the trial judge's decision (Green *v.* Shute, 15 *Daly*, 358 ; Gilder *v.* Davis, 45 *State Rep.* 690 ; Burrows *v.* Atlas SS. Co., 46 *Id.* 533 ; Mayor, etc., *v* Sands, 39 *Hun*, 519, 524).

Appellant contends that the rescission of the contract of March 4th discharged both the maker and the indorsers of the notes in suit from any liability thereon. This would be the case if the notices served by Hurst upon Lovell amounted to a rescission in the ordinary acceptance of that term (Graves *v.* White, 87 *N. Y.* 463 ; 2 *Dan. Neg. Inst.*, sec. 1306 ; Freeth *v.* Burr, *L. R.* 9 *C. P.* 208 ; Mersey Steel & Iron Co. *v.* Naylor, *L. R.* 9 *App. Cas.* 434 ; Creighton *v.* Haggerty, 50 *Super. Ct.* 9 ; Weeks *v.* Robie, 42 *N. H.* 316 ; Mills *v.* Parkhurst, 126 *N. Y.* 89 ; *Bishop on Contracts*, § 827 ; Conrow *v.* Little, 115 *N. Y.* 394 ; Fowler *v.* Bowery Savs. Bank, 113 *N. Y.* 450, and many others which might be cited). The question then arises as to what was really intended by the plaintiff's notice of April 9th, 1892. Did he thereby mean that he rescinded the contract *ab initio*, or only from and after April 9th, 1892, the date of the notice? And this depends upon the construction to be given to the words " I hereby *terminate and rescind* my said written contract," to be determined in the light of surrounding circumstances. Good writers often use the word " rescind" in the narrower sense to terminate a contract as to the future transactions Thus, in a note at page 145, 28 *Abb. N. C.*, Dr. Abbott says : "The word ' rescind' is often and not improperly used to mean

Hurst *v.* Trow's Printing and Bookbinding Co.

cutting off." Thus Bispham (*Eq. Juris.* 556, § 506) says a dissolution of the partnership is a rescission of the contract, meaning of course a rescission as to future transactions. The words "rescission" and "rescind" are used *simpliciter* by the highest authorities to indicate in some cases partial rescission or termination, as well as to indicate in other cases annulment *ab initio.* Thus *Leake on Con.* (3d ed., 1892), p. 53, says: "In a case of money lent under a special contract, which was afterwards rescinded by mutual agreement, it was held that the money still remains due, the rescission relating only to the further execution of the contract." FRY, J., says in Bluck *v.* Capstick (*L. R.* 12 *Ch. D.* 863), in speaking of the dissolution of a partnership which involved the refusal by defendant, an incoming partner, to pay his bonds or premium after three months joint conduct of the business, the pretext for his refusal being the allegation that plaintiff had not fairly performed on his part: "I must have regard to the circumstances which have led me to the dissolution of the partnership. . . . . The allegation of misconduct on the part of the plaintiff failed, and in my opinion the defendant has, in effect *rescinded* the partnership agreement without any excuse," and he thereupon went on to decree *pa ment of the premium* agreeably to the terms of the partnership, thus showing that the rescinding spoken of was not an absolute rescission or annulment of the partnership *ab initio,* but a termination or rescission restricted to the future. This is made still clearer by the head-note, which states the case as one "where a partnership is dissolved before its natural expiration, etc., without payment of the premium . . . the part ner who has agreed to pay it" (if his fault is the sole cause of the dissolution) "will be ordered to pay the whole of it, notwithstanding the dissolution." In 2 *Pars. on Cont.,* 7th ed. 677 (star paging), we find these words: "And a suit for the recovery of damages for a breach of the contract is equivalent to a notice of rescission," citing

Graham v. Halloway (44 *Ill.* 385). In Mann v. Palmer (3 *Abb. Ct. App. D.* 162) the head-note is " Acquiescence in the rescission of the executory contract is not necessarily a waiver of an existing claim for profits made under it." Obviously, a single word, like the word rescind, cannot be wrenched from its context and construed alone in its unqualified, strict and technical sense in disregard of the surrounding circumstance. To ascertain the import of the notice, the intent must be gathered from the instrument considered as a whole. " It is a cardinal rule in the construction of contracts that the intention of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated. Too much regard is not to be had to the proper and exact signification of words so as to prevent the simple intention of the parties from taking effect, and where the language is susceptible of more than one interpretation, the court will look at the surrounding circumstances when the contract was entered into, the situation of the parties and of the subject-matter of the instrument"(French v. Carhart, 1 *N. Y.* 102 ; App'd Bridger v. Pierson, 45 *Id.* 604 ; Kenyon v. Knights Templars Ass'n, 122 *Id.* 247). And this rule has been applied even to the interpretation of charters and legislative enactments (McGaffin v. City of Cohoes, 74 *N. Y.* 387). On the general question under consideration, see, also, Blossom v. Griffin (13 *N. Y.* 569) ; Zimmer v. Settle (124 *Id.* 37).

Under the light of these authorities, we think the circumstances surrounding the making and termination of the contract should be considered. It is undisputed from the 4th of March, 1890, the date of the contract, down to the 9th of April, 1892, Hurst had in all things performed his part of the contract, inasmuch as Lovell had enjoyed the exclusive use of the plates down to the latter date, and Hurst had refrained from publishing, as he agreed, any works in competition to those mentioned in the agreement. Hence, by virtue of such performance, Hurst had, on the 9th of April, 1892, earned

and had a vested right of action on all of said series of notes maturing prior to April 9th, 1892, and then unpaid. None of these were returned at the time of the giving the notice ; some of them were then in action. Lovell had, in violation of his contract, made default in the payment of eight of the series. In consequence of these repeated defaults on Lovell's part, Hurst was clearly justified on April 9 in terminating the contract, as to its unexpired part, and in holding Lovell upon his contract and notes given thereunder, for the liability already incurred on his previous defaults (In re Kelly, 51 *Fed. Rep.* 194; Cunningham *v.* Massena Springs, etc. R. R. Co., 63 *Hun,* 439, 443; Strack *v.* Hurd, 41 *State Rep. 777*; Gardner *v.* Clark, 21 *N. Y.* 399). In giving Lovell notice of such termination of the contract, Hurst was not confined to any particular form of words so long as their import was to terminate the contract in respect to its unexpired period. If, instead of using the expression " terminate and rescind," Hurst had written that he had terminated the contract as of the date of the notice, or had coupled with the word " rescind " words showing express reservation of his accrued rights, this would have meant simply that he terminated the contract only as to its unexpired period (McCreery *v.* Day, 119 *N. Y.* 1 ; Roe *v.* Conway, 74 *Id.* 201 ; Duncan *v.* New York Mutual Ins. Co., 46 *State Rep.* 241). In the light of the surrounding circumstances, has he done anything else than this?

But it is claimed that we must give effect to all the words in the contract. We do this in this case by making the word " rescind " equivalent to the word " terminate," and hence regard it as mere tautology and synonymous with " terminate." The curious in such matters would see in this no more than a survival of that disposition which draftsmen exhibited when the fee bill was in part regulated by the folio, and they became expert in the use of a large vocabulary of words having the same or similar meaning in order to increase the number of folios.

Hurst *v.* Trow's Printing and Bookbinding Co.

It is quite true, as contended for by the appellant, that as a general rule, where there has been a breach of a contract, the party performing has the right to consider such breach as a basis for rescinding and abandoning the contract, or to treat the contract as subsisting and sue for the enforcement of the unperformed obligation, and the election to rescind the agreement bars the pursuit of the other alternative. Yet this is so only in cases where the contract is rescinded *in toto* and *ab initio*. In such cases he cannot regard the contract as existing and not existing at the same time; he must choose between the two. But, as before shown, there are numerous cases in which the party performing the contract on his part may terminate it as to the future and still hold the delinquent party for its performance up to the time of its termination. In addition to what has been said, we may call attention to the familiar illustration of an ordinary lease for a number of years, where it is provided that the same shall continue for a definite period of time, with instalments of rent to be paid monthly. If the lessee neglects to pay these monthly instalments, the landlord may allow the lease to go on to the end and sue for the whole rent due, or he may, at any time, by the commencement of summary proceedings, obtain possession of the leased property and thus recover for the rent due up to the time of the dispossession. And we have no doubt whatever but that the contract under consideration falls within the latter class of cases.

Again, all the facts in this case were undisputed. If conflicting inferences were to be drawn from these facts, the action of the parties in requesting the court to direct a verdict made it the judge of those inferences to the same extent that the jury would have been had not such requests been made; and we think there is quite sufficient in these cases to warrant the judge in drawing the inference he did in favor of the plaintiff's contention.

But, it is claimed on behalf of appellant that, even conceding Lovell might be held upon the notes due and

unpaid at the time of the rescission, the indorsers were thereby discharged because of the modification of the contract between Lovell and Hurst, inasmuch as the only liability of the defendants to the plaintiff is as sureties for Lovell, the sole party to the contract.

It is difficult to see how a cancellation of a contract is a modification of it. The terms of the contract were in no way changed by such termination, and if Lovell was not discharged from the obligation he incurred before the rescission, we cannot see how his sureties could be. As before shown, all the unpaid notes, up to the date of the rescission, had been fully earned by Hurst by the performance of the contract on his part, and Lovell had had all the benefits of the contract up to its rescission ; and in our opinion the notes were in the nature of rent for the plates, etc., and the defendants were liable for its payment. We fail to perceive any force in the argument that the defendants were injured by such rescission ; on the contrary it appears to us that it was greatly to their advantage, as in consequence of it they were relieved from a large liability which, if the contracts had been allowed to continue, they or their principal, Lovell, would have had to meet, with no resulting advantage to the indorsers.

The contention that the sureties were released because of an extension of time granted the principal, is not well founded. Such a contention is based solely upon the letters written by the plaintiff to the defendant, which, instead of extending his time to pay the notes, really were intended to press upon him the necessity for immediate payment. The mere failure to sue upon the notes when due never releases the indorser.

The judgment should, therefore, be affirmed, with costs.

BISCHOFF, J., concurred.

PRYOR, J. (dissenting)—I am unable to concur in the prevailing opinion. The notes in suit were given in execution of the agreement of the 15th of June, 1892 ; but that

·contract was "rescinded" and "annulled" by the mutual
·consent of the parties; and by consequence, all rights
acquired under it ceased and determined.

A rescission of the contract imports *proprio vigore* a
relinquishment of every benefit and a dissolution of every
obligation dependent upon it; and by the act of rescis-
·sion each party is restored to his original position and
relation. It is a contradiction in terms to assert a right
under a rescinded contract; "and neither party can there-
after invoke it against the other" (McCreery *v.* Day, 119
*N. Y.* 1; Graves *v.* White, 87 *Id.* 463, 466; Brewster *v.*
Wooster, 131 *Id.* 473; Fullager *v.* Reville, 3 *Hun*, 600).
By rescission of the contract, of which they were an inci-
dent, the notes became incapable of enforcement. Other-
wise, however, had they been reserved from the operation
of the rescission; but of that there is no hint,—the words
being "wholly rescinded and annulled."

NOTE ON THE LEGAL EFFECT OF PROMISSORY NOTES OR
    ACCEPTANCES GIVEN FOR PAYMENTS EXPECTED TO BECOME
    DUE UNDER CONTINUING OR OTHER EXECUTORY CON-
    TRACTS.

It is becoming a common practice in executory contracts
that contemplate the lapse of a considerable period before
complete performance, to stipulate for the giving of notes
by the party expected to make the payments, these notes
being usually required to be given at the outset, or from
time to time in advance of any payment having become
·actually due. A common form of such contracts is to pro-
vide that the contractor who is to furnish from time to
time supplies or materials or labor, or it may be the vendor
in a land contract, shall be paid specified instalments as
·time passes or as deliveries progress, and then to add a
provision to the effect that the other party shall simultane-
ously with the execution of the contract give his promissory
notes corresponding with such instalments, payable in a
·series of periods corresponding more or less with the antici-
pated progress of the work.

Three views seem to have been taken of the legal effect
of such notes. One is, that they are merely modal, and
only intended to dispense with notice of performance and
demand of payment by providing that the duty of the
·employer or debtor party in respect of the paying an instal-

ment in case it be actually earned, shall be to have the money at the place of note-payment, at the peril of having his note dishonored if he wishes a few days indulgence.

A second view is that the note is to be read as if written into the contract, and subject therefore, to be restrained in legal effect (as between the parties and their privies) by the stipulations and conditions contained in the contract.

A third view, and the one usual I believe among business men, and the one approved in effect by the best considered cases, is that the giving of separate notes, absolute in terms, manifests an intention to accomplish more than a similar promise embodied in the contract, viz., to make the sum payable absolutely and at all events, without conditions ; and to leave a breach of the contract on the part of the holder of the note to be redressed by an action for damages, or in modern practice by recoupment or counterclaim for damages in case the note is sued on by the payee.

The business reasons which make this view advantageous are easily seen. The contractor can use the notes by negotiating them and thus getting means to carry out a contract he could not otherwise undertake, and the transferee for value before maturity can recover notwithstanding he had notice of the contract under which they were given.

Moreover, the contractor, if he continues to hold the notes, cannot be put off by disputes raised by the maker respecting the sufficiency of performance, but the maker must pay all that fall due, and is protected as to the future by his right to terminate his liability as to those which have not fallen due by terminating the agreement itself on the ground of forfeiture, if such ground exists, and, protected as to the past if he chooses to refuse payment of any already due, by his right to a cross action, or to a recoupment, for the damages he has sustained by the alleged past insufficiency of performance.

Whether this third view is sanctioned by the law as well as commended by its business advantage for contractors who choose to require notes, may be best determined by inquiring what is the legal effect of a note given on an executory consideration when no such continuing contract exists, and what is the effect of the voluntary giving of a note by way of advance on a continuing contract which does not call for notes.

The principle established at common law that a promise is a sufficient consideration for a promissory note, notwithstanding the subsequent breach of the promise, is doubtless what led to the adoption of this system of independent notes to secure payment of instalments. The cases are not

harmonious, but considered together they appear to afford adequate support for the following conclusions :

1. A note absolute in terms may be *delivered* upon an oral condition which is to prevent its taking effect until performance of the condition (Seymour *v.* Cowing, 4 *Abb. Ct. App. Dec.* 200), but if delivered absolutely, an action lies upon it even though it was given upon an executed consideration which has wholly failed, or upon an executory consideration which has never been performed ; because a promise is a sufficient consideration for a promise ; and the breach of the consideration-promise is matter for damages.

2. A note may be made to contain a condition in its own terms, or by a supplementary written agreement contemporaneous with it expressly restraining its effect, or may be modified by a subsequent agreement founded on a consideration ; and in such case the note itself is as between the parties, not an absolute note, but qualified by the agreement.

3. An absolute note, given voluntarily by way of an advance or payment on account, under a contract which does not by its terms require the giving of a note, is nevertheless a waiver of the right to insist that the terms of the contract make performance a condition precedent of the payment thus secured by the note, or to insist that the payment of the money secured by the note was dependent on the stipulation to perform ; so that a breach of the stipulation in the contract will not be, even as between the parties, a bar to an action on the note, but at most a counter-cause of action for damages.

4. The same effect follows where the note is stipulated for in the contract. The requirement and the concession of an absolute note, separate from the contract, and having no reference to it and no condition expressed, is in itself a manifestation of intention of both parties to make an independent obligation not conditioned on performance of even express conditions in the contract.

5. Until recent times the breach of the executory consideration for an absolute note could in no case be set up in an action on the note. It was an independent cause of action to be presented by an independent suit. Since the establishment of the doctrine of recoupment and the adoption of the provisions of the Codes of Procedure, allowing any cause of action on contract to be a counter-claim in any action on contract between the same parties, the maker of the note when sued upon it may set up, not in bar, but as a counter-claim, any cause of action he has against the payee of the note ; and there seems some authority for saying that a breach of the contract relating to the consideration

·of the note might, under the present provision of the New York Code, § 508, be pleaded as a " partial defense " by way ·of recoupment or mitigation of damages, without stating it formally as a counter-claim. ·

<em>Notes of Cases.</em>

   I.  *Absolute note on executory consideration.*
  II.  *Note in terms conditional.*
 III.  *Note with contemporaneous qualifying agreement.*
 IV.  *Note voluntarily given in advance or on account, under a continuing contract.*
  V.  *Note given under requirement therefor, in continuing contract.*
 VI.  *Rescission.*

   1.  *Cases on absolute notes given upon an executory consideration.*

   1.  *Note for an executory consideration subsequent.*] Chapman v. Eddy, 13 *Vt.* 205.  It is no defense to an action on a note, that the consideration thereof was a promise by the payee to give a deed of a pew by a certain time thereafter, which was not done within the time specified, nor before the commencement of the action upon the note.

   The court say :  " Had this whole contract been included in one instrument, there might have been some ground for insisting that the execution of the deed by the plaintiff was to precede the defendant's liability to pay.   But when each party takes a separate instrument to secure the undertaking of the other, it is conclusive that they are independent.   Here the defendant gave his unconditional note, and took of the plaintiff his promise afterwards to execute a deed.   With that promise he was then content and to that he must look.   He can not now by parol add conditions to the note."

   2.  *Performance to accompany payment of note.*] McMath v. Johnson, 41 *Miss.* 439.   Action on a note.   On demurrer to defendant's plea, *held*, that when the vendee of land executes his notes in instalments to secure the payment of purchase-money, and takes a bond from the vendor, conditioned to make title when the last instalment· is paid, the covenants are independent, and the vendor may enforce payment without performance on his part.

   • [In this case the court distinguishes cases holding covenants to ' be dependent where there is but one note for the purchase·money, and-title is to be given on its payment.]

Note on Continuing Contracts with notes for Instalments.

3. *Exchange of notes.*] Cobb v. Titus, 10 *N. Y.* 198. Where two persons exchange with each other notes of equal amounts for the purpose of raising money by the sale of the notes, each note is a valid consideration for the other, and a sale of either, at a discount greater than the lawful rate of interest, does not render it usurious in the hands of the purchaser.

4. See Newman v. Frost, 52 *N. Y.* 422. The giving of a bill of exchange in exchange for a promissory note furnishes a good consideration for the undertaking of each.

5. McSpedon v. Troy City Bank, 3 *Abb. Ct. App.* 133. Negotiable notes, made under an agreement that the payees should give the makers a definite sum weekly, in the bills of a certain bank in payment therefor, and the notes at maturity should be taken up by the makers,—*Held*, to be not accommodation, but business paper made for a consideration ; and when transferred to third persons by the payees, in payment of, or as collateral security for their indebtedness, to be not subject to equities subsequently arising between the original parties.

6. Rice v. Grange, 39 *State Rep.* 163 ; s. c., 14 *N. Y. Supp.* 911. A note given by defendant to plaintiff's assignor, in exchange for a note of like amount made by a third person, and indorsed by plaintiff's assignor, is supported by a sufficient consideration, and is not affected by the failure of such third person to pay the note held by defendant.

7. Backus v. Spaulding, 116 *Mass.* 418. A promissory note made by one party in exchange for a note made by the other is founded upon a sufficient consideration, although the latter note is payable subsequently thereto.

8. *Defect of title to thing sold.*] Squires v. Peck, 14 *Weekly Dig.* 564. In an action on a promissory note, the fact that the plaintiff (the payee) did not have perfect title to the real estate, for the purchase price of which the note was given, is no defense, unless the defendant gave or tendered back to plaintiff a deed of the premises before suit brought.

9. *Agreement to convey land of another.*] Trask v. Vinson, 20 *Pick.* (*Mass.*) 105. A promissory note founded on the payee's agreement to convey in the future to the promisor, land belonging to a third person, is not invalid on the ground of want of consideration.

10. *Refusal to deliver thing sold.*] Murphy v. Lippe, 35 *Super. Ct.* (*J. & S.*) 542. Where the title to an article sold passed, and the buyer was entitled to possession upon the delivery of his note for

the purchase price, a subsequent refusal by the vendor to deliver the article to the purchaser, does not invalidate the note; as such refusal does not cause a failure of consideration, but merely deprives the purchaser of the benefits of the sale.

11. Pratt *v.* Gulick, 13 *Barb.* 297. Action upon a note. The note was given plaintiff upon his entering into a contract to make a future delivery of lumber to defendant.—*Held*, that the note being upon its face an absolute promise to pay and not conditional agreement, nor dependent upon the delivery of the lumber, the non-delivery of the lumber was no defense to the action upon the note.

12. Mitchell *v.* Stinson, 80 *Ind.* 324. In an action on a note, by an indorsee, the answer alleged that the note was given for personal property specified, which the payee agreed to deliver to the maker, and never did deliver, and that the note was not negotiated until after maturity.—*Held*, on demurrer to answer, that it set up a defense showing that there had been a failure of consideration, and was sufficient.

13. *Delivery of possession, but refusal to convey.*] Freligh *v.* Platt, 5 *Cow.* 494. A promissory note given in consideration of a sale of pews, followed by possession in the vendee, cannot be avoided on the ground that the vendor refuses to convey; the remedy of the maker of the note is to compel a performance of the contract.

14. *Inability to give title.*] Lewis *v.* McMillen, 41 *Barb.* 420. Before a purchaser of real estate, who has been let into possession, can set up as a defense to an action upon a note given for an instalment of the purchase-money, the inability of the vendor to give a good title to the premises, he must surrender the possession of the premises.

15. *Fire risk.*] Tufts *v.* Griffin, 107 *N. C.* 47. Plaintiff delivered to defendant a certain article under a contract that the title should remain in plaintiff until the purchase-money note given by defendant should be paid. Before the note became due, the property was destroyed by fire while in defendant's custody and without his fault. *Held*, that notwithstanding the destruction of the property, plaintiff was entitled to recover the purchase-money.

Following Tufts *v.* Burnley, 66 *Miss.* 49 [compare cases collected in note on Fire risk under contract of sale, in 23 *Abb. N. C.* 449.]

16. *Death of animal sold.*] Winslow *v.* Wood, 70 *N. Car.* 430. Plaintiff sold defendant a mule, and took in payment the note in suit, payable at a future date.—*Held*, that the death of the mule within a week after the sale (there being no warranty or fraud) did

not cause the consideration for the note to fail, and was no defense to an action upon it.

17. *Stoppage in transit held a failure of consideration.*] Babcock *v.* Bonnell, 44 *Super. Ct.* (*J. &S.*) 568; aff'd in 80 *N. Y.* 244. When a note is given for the purchase-price of goods, and the goods while *in transitu* are stopped by the vendor, who takes possession thereof and sells them, the consideration for the note fails, and as between the original parties, the maker is discharged from all liability thereon, and on account of the purchase.

[The soundness of this may turn on the mooted question whether stoppage in transit is the assertion of a lien or a rescission.]

18. *Breach of stipulation for guaranty of thing sold.*] Stanton *v.* Maynard, 7 *Allen* (*Mass.*) 335. The maker of a promissory note, given in payment for railroad bonds, cannot show in defense of an action upon the note, that at the time when it was given the plaintiff orally agreed that before its maturity he would have the bonds indorsed by another railroad company, and had failed to do so.

The court say: "The notes and the agreement are independent contracts, and therefore the action can be maintained on the notes, though the agreement respecting the indorsement of the bonds has not been performed."

20. *Good will of no value.*] Smock *v.* Pierson, 68 *Ind.* 405. The transfer of the good will of a business is a sufficient consideration for a note; and the liability on the note is not affected by the fact that the business does not thereafter prove successful.

21. *Breach not an entire failure; but only matter of damages.*] Black *v.* Ridgway, 131 *Mass.* 80. Action on a note. The consideration of the note was a contract by which plaintiff transferred to defendant the agency for a gas company, and also agreed, thereafter, to purchase of the defendant all the gas that he might use and not to purchase from the company.—*Held,* that the failure of the plaintiff to buy all his gas from defendant, did not operate as an entire failure of consideration for the note, but merely a partial failure, for which defendant was only entitled to a reduction of the amount recoverable upon the note.

22. *Damages may be recouped.*] Stacy *v.* Kemp, 97 *Mass.* 166. Action on a note.—*Held,* that defendant might show the note was given in consideration of the sale to him by plaintiff of the good will of the latter's business, and an agreement by plaintiff not to carry on a rival business; and that there had been a partial failure of the consideration of the note, by reason of plaintiff's subsequent interference.

Note on Continuing Contracts with notes for Instalments.

The court say : " It was formerly held that such damages must be recovered by a cross-action and could not be proved or allowed in defense to an action on the note, by way of recoupment. But the doctrine of recoupment of damages was fully established in Harrington *v*. Stratton, 22 *Pick*. 510. See Burnett *v*. Smith, 4 *Gray*, 50. It has since been applied in numerous cases, and was, already well established in New York."

23. *Accommodation paper enforcible notwithstanding breach of warranty.*] Gillespie *v*. Torrance, 25 *N. Y.* 306. The accommodation indorser of a note given for chattels sold, cannot, at law, avail himself of a breach of warranty as to the quality of such chattels, by the way of defense, recoupment, or counter-claim. Such a defense does not rest upon a failure of the consideration of the contract on which the action is founded, but is the setting-off of one distinct claim against another.

24. *Rights of bona fide transferee for value before maturity.*] Maas, *v*. Chatfield, 90 *N. Y.* 304. Where a promissory note was given in payment for goods to be delivered, and the note was immediately transferred to a *bona fide* purchaser for value.—*Held*, that the maker of note could not set up the subsequent failure by the payee of the note to deliver the goods, as a defense to an action upon the note by such transferee.

25. *Notice of contract not notice of equities.*] Davis *v*. McCready, 17 *N. Y.* 230. The breach of an executory contract, which formed the consideration for the acceptance of a bill of exchange, is no defense in whole or in part, to an action by indorsers who took the bill for value, with notice of the contract, but without notice of the breach.

The court say : " Considerations founded upon reciprocal promises of the parties are of common occurrence in business ; and bills and notes supported by such considerations have always been held valid."

## II. *Note in terms conditional.*

26. *Condition precedent.*] Chapin *v*. Allen, 19 *N. Y. Supp*. 818 ; s. c., 47 *State Rep*. 116. Defendant in part payment for a heater, gave a note payable "in six months or sooner, provided that the heater proves to work satisfactorily." At the same time plaintiff gave a written warranty as to the qualities of the heater. The heater worked unsatisfactorily and not as warranted.—*Held*, that the note was subject to a condition precedent ; and that such condition not having been performed, plaintiff could recover nothing upon the note, except what might be left over after putting the heater in working order.

Note on Continuing Contracts with notes for Instalments.

The court say: "The rule of law that between maker and payee conditions precedent can be proved by parol is unquestioned, even where the face of the note is absolute."

27. *Note containing executory condition subsequent.*] Hawley *v.* Bingham, 6 *Oreg.* 76. Action by payees against maker. The note was in the usual form, with an additional clause to the effect that the note was given in consideration that the plaintiffs, upon the payment of the note at maturity, would sell and transfer to defendant a planing machine.—*Held,* that the delivery of the machine was not a condition precedent to plaintiff's right to recover upon the note.

28. *Distinction recognized in pleading. Admission of making alleged note precludes proving it was a conditional promise to pay.*] Coffin *v.* Grand Rapids Hydraulic Co., 18 *N. Y. Supp.* 782 ; S. C., 4 *State Rep.* 851. Plaintiff brought an action on a promissory note alleging an absolute promise to pay. The answer expressly admitted the making of the note, as set forth in the complaint, and set up as new matter in defense, an alleged agreement under which the note was given.—*Held,* that the defendant was concluded by admission in the answer and could not show, upon the trial, that the obligation sued on was not a promissory note, but a conditional agreement for the payment of money.

29. *Performance to precede payment of note.*] Johnson *v.* Morrison First National Bank, 24 *Ill. App.* 352. In an action on a promissory note, a plea was interposed to the effect that the note was given for seed oats, in connection with an agreement that it was not to be paid until the crop matured and the payee had sold a certain quantity of the oats raised, at a stipulated price; that plaintiff, as assignee, had notice of such agreement, and that such sale had not been made.—*Held,* that the plea set up a good defense, as the promise by payee to sell the oats raised and of the maker to pay the note were dependent covenants.

III. *Note with contemporaneous qualifying agreement.*

30. *Connected agreement for collaterals.*] Coffin *v.* Grand Rapids Hydraulic Co. (Super. Ct. 1892), 18 *N. Y. Supp.* 782 ; S. C., 46 *State Rep.* 851. Action on a note. The note was given pursuant to a written agreement for money loaned, with certain bonds of the defendant company attached as collateral. The agreement also provided that the defendant might substitute for these bonds others to be issued by it, which the plaintiff agreed to buy at a certain price before the maturity of the loan.—*Held,* that defendant

having failed to issue the new bonds, the agreement did not bar an action on the notes.

31. *Restriction as to use of note.*] Simpson Centenary College *v.* Bryan, 50 *Iowa*, 293. Action on a note. Defendants answer set up that the note had been given as a part of an endowment fund for plaintiff (a college) under an agreement that such fund should not be diminished, and should be only used for specified objects ; and alleged that plaintiff had violated this agreement.—*Held*, on de-murrer to answer, that the defense was good.

The court say : "The note cannot be enforced if the agree-ment of the plaintiff upon which its consideration is based has been violated by the payee.

32. Laughlin *v.* Clausen, 85 *Cal.* 322. In an action on a prom-issory note, an answer setting out a contract which provides in express and unequivocal terms, not only that the note should not be paid until the completion of a railroad within a time limited as therein provided, but that the note should be held by a trustee and not delivered until such conditon was complied with, and alleging that the plaintiff did not carry out his contract, discloses a good defense and is sufficient on demurrer.

33. *Condition as to payment.*] Hall *v.* Henderson, 84 *Ill.* 611. Where a promissory note is given for a draft assigned by the payee of the note to the maker, and an agreement executed at the same time, that in the event the maker of the note could not "collect or realize" on the draft, he was to be released from the payment of the note, no recovery can be had by the payee on the note if the maker has been unable to realize anything on the draft.

34. *Executory agreement to return other note.*] Trauer *v.* Stevens, 11 *Cush. (Mass.)* 167. Assumpsit upon notes. The only defense was a failure of consideration, to prove which the defendant produced a receipt given for the notes, stating that for the notes received from defendant, plaintiff was to send defendant a certain other note of his in balance of the settlement between them.—*Held*, that the defense of want of consideration failed ; the promise of plaintiff to deliver up the note was a sufficient consideration for the notes in suit.

The court say : "The only ground of defense that can be plaus-ibly urged is, that this was a conditional promise, and the con-dition not performed upon which it rested. But as it seems to the court, the note was given upon a good consideration, and the delivery of the other note was not a condition precedent to the recovery of the note in suit. The stipulation, to send defendant

his other note, was an independent stipulation, executory in its character. The two promises were to be performed at different times, and this also shows them to have been independent.

To same effect, with substantially the same facts, see Waterhouse *v.* Kendall, 11 *Cush.* (*Mass.*), 128.

35. *Renewal note and breach of agreement to return the original.*] Beauford *v.* Patterson (N. Y. Com. Pleas, Gen. T.) 63 *How. Pr.* 81. The defendant gave two notes in settlement of a past due bill, upon the promise of the creditor to return the bill. *Held*, that the failure of the creditor to return the bill, was a good defense to the new notes. Following Miller *v.* Ritz 3 *E. D. Smith*, 253, and disaffirming dicta to the contrary in Catlin *v.* Hanson, 1 *Duer*, 300.

36. *Contingent oral promise to surrender.*] Tower *v.* Richardson, 6 *Allen* (*Mass.*) 351. On the trial of an action by an indorsee against the maker, the defendant was allowed, for the purpose of showing a failure of consideration, to give parol evidence that by an oral agreement, when the note was made, the note should be given up in a certain event, and that event had happened. *Held*, that the admission of such evidence was error. Such evidence cannot be considered even upon the question of failure of consideration.

37. *Accommodation.*] In President, etc. of Union Bk. *v.* Crine, 21 *Abb. N. C.* 146, (SHIPMAN, J., U. S. Circ. Ct.) it was *held* that an answer setting up that the maker was an accommodation maker, and gave the note under an express agreement with the payees, indorsers and the indorsee plaintiff, that he should not be liable upon it, was a good defense to the maker ; but the point was deemed doubtful. Citing *contra*, Hoge *v.* Lansing, 35 *N. Y.* 136. It did not appear whether the agreement was written or oral.

38. *Indorsement as security in consideration of forbearance, which, however, was not given.*] Bookstaver *v.* Jayne, 60 *N. Y.* 146. In an action upon a promissory note against an indorser, defendant set up in his answer that he indorsed the same as security for a debt due from the maker to plaintiff, upon the agreement of the latter with defendant to discontinue a suit brought for the recovery of the debt ; that in violation of such agreement, plaintiff thereafter proceeded to judgment and execution against the maker, thereby causing him to fail and depriving him of an opportunity to pay the note. *Held*, a valid defense, and that the defendant could show the failure of consideration for his indorsement.

39. *Subsequent agreement for renewal.*] In State Loan and Trust Co. *v.* Helmer, 12 *Hun,* 35 (DANIELS, J.), a subsequent agreement presumably in writing, that the maker might give a renewal note at maturity of the one sued on, followed by tender of the renewal note and refusal to receive it, was *held,* on demurrer, a good defense. And the court of appeals, affirming the judgment on another ground in 77 *N. Y.* 64, were inclined to approve this ruling.

40. *Recovery back.*] Nowak *v.* Knight, 47 *Minn.* 298; on a former appeal, 44 *Id.* 241. Where a note was given for services to be rendered in obtaining an homestead entry, and also with the stipulation that the note should be returned in case the entry was not made, *held,* that the maker of the note, who had been compelled to pay it after it had been negotiated, in violation of the agreement under which it had been given, might maintain an action against the person to whom he gave it, to recover back what he had been compelled to pay.

IV. *Note voluntarily given in advance or on account under a continuing contract.*

41. *Note receipted for as cash paid in advance.*] Speller *v.* Westlake, 2 *B. & Ad.* 155. Action by payee against maker. The note was given on the signing of a contract to convey real estate, to secure a part payment of the purchase-money (which the contract recited as having been paid), and was made payable on the same day upon which the balance of the purchase-money was to be paid, and the conveyance executed. *Held,* that conveyance by plaintiff was not a concurrent act to the payment of the note; and that plaintiff might recover without executing or tendering a conveyance.

TENTERDEN, Ch. J., says: " I can see no reason why he should have executed a distinct instrument whereby he promised to pay a part of the purchase-money on a particular day, unless it was intended that he should pay the money on that day at all events."

42. *Before completing work.*] Walker *v.* Millard, 29 *N. Y.* 375. Before the completion of a contract to build, the party for whom the work was being done, voluntarily gave his note to be applied in payment on account of the work already done under the contract.— *Held,* that the giving and acceptance of the note operated as a modification of the contract to pay when the work was completed, and that the subsequent failure of the party receiving the note to complete his work furnished no defense to his action upon it.

Note on Continuing Contracts with notes for Instalments.

43. Trickey v. Larne, 6 *M. & W.* 278. Plea, to an action by drawer against an acceptor of a bill of exchange, that before the drawing and acceptance of the bill it was agreed between the plaintiff and defendant that the plaintiff should do certain carpenter work for the defendant, for a certain price, and that before the work was completed plaintiff made a part payment in cash, and accepted the bill in suit for the balance of the amount to be paid ; and that the plaintiff had not performed the work according to contract.—*Held,* on motion for judgment *non obstante verdicto,* that the plea was bad as only showing partial failure of consideration.

44. *Inability to convey.*] Lewis v. McMillen, 41 *Barb.* 420. Where notes were given by the purchaser of real•property at the time of entering into the contract, to secure the payment of instalments of the consideration money ; and the payment of the whole consideration was, by the terms of the contract, made a condition precedent · to the delivery of the deed.—*Held,* that the inability of the vendor to give a good title, was no defense to an action upon the notes.

45. *Note given in anticipation by one requesting services becomes valid on subsequent rendition of services.*] Miller v. McKenzie, 95 *N. Y.* 575. A promissory note given without consideration to induce the payee to render future services, as to which the payee enters into no binding contract to perform at the time of the making of the note, becomes valid and binding upon the actual rendition of the services by the payee in reliance on the note so given.

V. *Note given under requirement therefor in continuing contract.*

46. *Contract not making performance a condition precedent to payment of notes.*] Bruce v. Carter, (Ct. of App.) 1 *City Ct.* 380 ; Mem. of S. C., 72 *N. Y.* 616. Where upon entering into an executory contract, one party gives his notes payable at future dates for instalments of the consideration, and performance by the other party is not made a condition precedent to the payment of the notes,—the promise of performance on his part being independent, although mutual,—non-performance by the party to whom the notes are given will constitute no defense to his action upon the notes, although the notes in suit may have become due after a failure to perform on his part. *So held,* in an action upon notes given under a written agreement for the settlement of two actions,—by which the defendants were to pay $6000 in instalments by notes payable at future dates, and when $3000 of the notes were paid, the plaintiffs were to discontinue one of the actions, and were to give defendants a general

release, which was not to be operative, however, until all the notes were paid, and when all were paid the second action was to be discontinued,—where defendants attempted to defend the notes in suit upon the ground that the plaintiff had refused to give the requested release after the $3000 had been paid.

S. P., See Union Foundry, etc. Co. *v.* N. Y. Lumber Drying Co., 13 *State Rep.* 701 (containing *dicta*, however, to the effect, that in such a case, the non-performance may he pleaded as a partial defense or by the way of recoupment in the action upon the notes).

S. P., Potts *v.* Point Pleasant Co., 49 *N. J. L.* (20 *Vr.*) 411, holding that a covenant to do work, and a covenant to pay therefor, at the end of each month, one quarter of the entire compensation, were independent.

47. Compare Gildersleeve *v.* Pelham, etc. R. R. Co., 11 *Daly*, 257; S. C., 16 *Weekly Dig.* 128. Here a promissory note was given in consideration of the discontinuance of an action pending against the maker and the execution and delivery to him of a general release by the plaintiff. The release was delivered, but the action was not discontinued.—*Held*, that an action on the note against the maker could not be maintained by an indorsee after maturity, although it did not appear that any damage to the maker had resulted from such failure to discontinue.

48. *Contractor, while instalments are unpaid, may recover for work done without completing.*] Strack *v.* Hurd, 28 *Abb. N. C.* 142; 14 *State Rep.* 777; S. C., 16 *N. Y. Supp.* 566. The law will not compel a contractor to complete the performance of an entire contract, as a condition of recovery, where the other party has failed to pay the stipulated instalments at the time they fall due, and while he is in default on such payments; but if such default exists the contractor may recover for work actually performed at the contract price.

See note to this case in 28 *Abb. N. C.* 145, on rescission or breach of a partly performed contract.

49. *Failure to give notes.*] Lutz *v.* Ey, 3 *E. D. Smith*, 621; S. C., 3 *Abb. Pr.* 475. Where a payment contracted for is to be made by note, and such note is not given, the party entitled to the note may sue for its amount after the expiration of the term for which the note was to be made; but in such a case the defendant should not be charged with interest during that time.

50. *Insured stipulating for payment of premium in note, entitled to absolute delivery of policy.*] Lawrence *v.* Griswold, 30 *Mich.* 410. Action on a note given in payment of the balance of a premium for

Note on Continuing Contracts with notes for Instalments.

a life insurance policy. It was agreed that the policy should be given for the note.—*Held*, that plaintiff was not entitled to recover on the note, until he had delivered or tendered to the defendant the policy, without any condition as to the payment of the note.

51. *Notes subsequently lodged as collaterals pursuant to stipulation for credit in consideration of receiving them.*] Fenby *v.* Pritchard, 2 *Sandf.* 152. On a sale on credit to be secured by the notes of a third person as collaterals, the receipt of the notes under such agreement, although after the delivery of the goods, makes the seller a *bona fide* holder of the notes for a valuable consideration, so as to protect him against any defense between the original parties.

## VI. *Rescission.*

52. *Right of rescission ab initio.*] Kokomo Strawboard Co. *v.* Inman, 45 *State Rep.* 610. Plaintiff contracted to furnish defendant with a certain quantity of strawboards. Defendant failed to pay at maturity notes given, pursuant to the contract for a portion of the boards delivered, and also had failed to give notes or acceptances for certain other deliveries.—*Held*, that plaintiff had a right to rescind and sue for the value of the goods delivered.

53. *Fraud and suit for entire rescission.*] Knappen *v.* Freeman, 47 *Minn.* 491. In an action on a note, an answer alleging that the note was given upon a purchase of real estate by defendant from plaintiff; that defendant was induced to make the purchase by the fraud of plaintiff (setting it forth); that as soon as defendant discovered the fraud, he commenced suit to rescind and tendered a reconveyance on condition that plaintiff surrender the note—is good, and evidence of such defense may be given under it at the trial.

54. *Absolute restoration not required in equity.*] Baker *v.* Ziegler, 56 *Hun*, 405; s. c., 31 *State Rep.* 466; 10 *N. Y. Supp.* 249. The purchaser of a stock and business may maintain an action in equity to rescind the sale and enjoin the enforcement of the purchase notes, for fraud on the part of the seller, and to recover damages for the fraud, where he can not by his own act rescind because of his inability to make restoration by reason of his having disposed of the original stock. In such a case the court will determine at the trial what restoration under the circumstances is proper.

55. Compare Farrell *v.* Corbett, 4 *Hun*, 128, *Mem.* Action to rescind a contract for the purchase of a liquor business for the fraud of the seller and to restrain the enforcement of a chattel mortgage given for the purchase price.—*Held*, that plaintiff could not main-

tain the action as she had failed to restore to the defendant the property received.

56. Duff *v.* Hutchinson, 57 *Hun*, 152; s. c., 32 *State Rep.* 949; 10 *N. Y. Supp.* 857.   Action to rescind a release on the ground of errors in accounts.   The complaint made no offer to return $750,-000, which plaintiff had received for the release, and it appeared at the trial that he was unable to made restitution.—*Held*, that the complaint was properly dismissed.   The court say :   " It is only in those cases where restitution is offered, and it appears that restitution can be made, that a court of equity will wait until final judgment to determine whether restitution should be made or not.

57. *On rescinding, for fraud, an executed sale, note may be produced at trial.*]   Nichols *v.* Michael, 23 *N. Y.* 264.   In an action by a vendee to recover back goods sold and delivered, because of fraudulent representations by the purchaser.—*Held*, that the vendee was not bound to tender back the negotiable promissory note of the purchaser given in payment for goods upon rescinding the contract ; it was sufficient for him to produce the note upon the trial and deliver it to the custody of the court.

The court say : " Most of the cases where a return has been held necessary before action related· to executory sales, and where the party sought to rescind because of the other party's failure to fulfill.   In such cases, a tender is, no doubt, a condition precedent to a right of action.

Followed in King *v.* Fitch, 1 *Keyes*, 432, 450; and Pequeno *v.* Taylor, 38 *Barb.* 375 ; S. P., Stevens *v.* Hyde, 32 *Id.* 171 ; Nellis *v.* Bradley, 1 *Sandf.* 560; White *v.* Dodds, 28 *How. Pr.* 197 ; S. c., 42 *Barb.* 554 ; 18 *Abb. Pr.* 250.

Compare Matteawan Co. *v.* Bentley, 13 *Barb.* 641, holding that an action to recover back property by reason of the fraud of defendant in procuring its sale, cannot be maintained unless the sale is rescinded before bringing the action, and that a tender of the notes received by plaintiff at the time of trial is not enough.

58. Compare Wheaton *v.* Baker, 14 *Barb.* 594.   Action to recover goods in possession of a person who had bought them of plaintiff's vendee, on the ground that the latter procured the sale by fraud. Upon the sale of the goods plaintiff received in part payment notes ·of a third person, and a note of the purchaser for the balance.—*Held*, that the action could not be maintained, no attempt having been made by plaintiff to rescind the contract of sale nor any offer to return the notes.